# United States Court of Appeals
## For the First Circuit

No. 09-2581

UNITED STATES OF AMERICA,

Appellee,

v.

RICHARD J. THOMAS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, U.S. District Judge]

Before

Lipez, Selya, and Thompson, Circuit Judges.

Virginia G. Villa, Assistant Public Defender, for appellant.
Renée M. Bunker, Assistant United States Attorney, with whom
Paula D. Silsby, United States Attorney, was on brief, for
appellee.

February 16, 2011

**THOMPSON, Circuit Judge**. Richard J. Thomas appeals from his sentence on one count of tax evasion in violation of 26 U.S.C. § 7201. We hold that the district court correctly calculated the applicable sentencing range and did not abuse its discretion in imposing an obligation to file all unfiled tax returns and pay all outstanding tax arrears as a condition of supervised release. Accordingly, we affirm.

## I. Background

In 1995, Thomas, a well-to-do chiropractor, simply stopped paying his taxes. Apparently convinced that he was under no obligation to do so – for a variety of frivolous reasons – Thomas fought the Internal Revenue Service (IRS) tooth and nail for twelve years, not conceding his obligation to pay taxes until 2007. Not only did Thomas fail to file returns or pay his taxes during this period, but he also engaged in several elaborate subterfuges to conceal his income from the federal government, even going so far as to set up a shell corporation in Nevada through which he would funnel proceeds from his chiropractic practice.

After much fruitless back and forth, the IRS commenced an investigation into Thomas's failure to pay taxes for the years 1995-2001. When it issued summonses in an attempt to acquire the documents necessary to conduct this investigation, Thomas moved to quash them in district court. Thomas v. United States, 254 F. Supp. 2d 174 (D. Me. 2003). When the court rejected most of his

motions, Thomas appealed to this court. Thomas v. United States, 93 Fed. App'x 238 (1st Cir. 2004) (per curiam) (unpublished). We characterized Thomas's argument in that appeal as a "conten[tion] that he could determine for himself whether he was subject to federal tax laws," an argument so "frivolous" that it merited a sanction of $2000. Id. at 239.

In January 2006, a federal grand jury returned an indictment charging Thomas with six counts of tax evasion in violation of 26 U.S.C. § 7201 for the years 1995, 1996, and 1998-2001, respectively. After more than three years of what the district court called the most "difficult" case it had ever managed, Thomas entered into a plea agreement in which he pled guilty to count six of the indictment in exchange for the dismissal of the remaining counts. The court sentenced Thomas to 24 months' imprisonment and ordered him to pay the mandatory assessment under 18 U.S.C. § 3013(a)(2)(A), the prosecution's costs, and restitution in the amount of the specific tax assessment he failed to pay for 2001. The court also imposed several conditions of supervised release, only two of which are relevant here: (1) that Thomas "report to the IRS and file true and accurate returns for any delinquent years . . . within 30 days of release [from] incarceration, or as otherwise directed by the supervising officer"; and (2) that Thomas "satisfy his tax liability to the IRS

-3-

and comply with any tax repayment schedule." Thomas timely appealed from the court's imposition of sentence.

## II. Analysis

Though Thomas has had many skirmishes with the district court, he raises only two arguments on appeal. He claims first, that the court improperly calculated the sentencing range associated with his crime, and second, that it abused its discretion in ordering him, as a condition of supervised release, to file income tax returns for all the years in which he failed to do so and to pay all delinquent taxes. We address these claims in turn.

## A. Guidelines range calculation

In determining the government's tax loss suffered for the purpose of calculating Thomas's sentencing range under the Guidelines, the district court included penalties and interest stemming from his failure to pay income taxes in 1995 and 1996. On appeal, Thomas claims that the Guidelines do not permit the consideration of penalties and interest for this purpose. We review the district court's Guidelines calculation de novo and any factual findings associated with the sentencing process for clear error. United States v. McCarty, 475 F.3d 39, 46 (1st Cir. 2007).

The tax evasion statute, 26 U.S.C. § 7201, punishes "[a]ny person who willfully attempts in any manner to evade or

-4-

defeat any tax imposed by [the Internal Revenue Code] or the payment thereof."  We have interpreted this statute as creating

> two distinct crimes: (1) the willful attempt to evade or defeat the "assessment" of a tax, and (2) the willful attempt to evade or defeat the "payment" of a tax.  The first crime includes evading the government's attempt to ascertain a tax liability.  The second crime addresses an individual's evasion of the payment of that tax.

United States v. Hogan, 861 F.2d 312, 315 (1st Cir. 1988) (citations omitted).  Thomas pled guilty to count six of his indictment, which alleged that he "willfully attempted to evade and defeat the assessment of a tax" in 2001.

Under the Sentencing Guidelines, the base offense level (BOL) for a conviction under § 7201 is determined by the "tax loss" resulting from the tax evasion.  U.S.S.G. § 2T1.1(a).  If the tax loss exceeds $400,000, the applicable BOL is 20, id. § 2T4.1(H), while a determination of a loss between $80,000 and $200,000 results in a BOL of 16, id. § 2T4.1(F).  This distinction is important here because in determining the "tax loss" associated with Thomas's tax evasion, the district court included penalties and interest from 1995 and 1996, which increased Thomas's BOL from 16 to 20.[1]  Ordinarily, as Thomas points out, penalties and

---

[1] After finding that a BOL of 20 applied, the district court subtracted three levels for acceptance of responsibility.  Given Thomas's lack of criminal record, an adjusted offense level of 17 translated into a sentencing range of 24 to 30 months.  U.S.S.G. ch. 5, pt. A (sentencing table).  Thomas contends that the district court should have applied an adjusted offense level of 13, which would result in a range of 12 to 18 months.  Id.

-5-

interest should not be included in tax loss calculations for the purpose of determining the BOL. Id. § 2T1.1 cmt. n.1. An exception applies, however, for "willful evasion of payment cases." Id. Thomas concedes this point. He argues that the district court erred in including penalties and interest in computing the tax loss from 1995 and 1996 because he did not evade the payment of a tax – only the assessment.

It is true that Thomas pled guilty to evasion of tax assessment – not evasion of a tax payment – for tax year 2001. Contrary to Thomas's assertion, however, the precise nature of a defendant's plea does not prevent the district court from considering conduct committed in furtherance of the convicted offense. See United States v. Cintrón-Echautegui, 604 F.3d 1, 5 (1st Cir. 2010). Our caselaw recognizes that "[u]nder the guidelines, a defendant may be held responsible at sentencing for relevant conduct, including 'all acts and omissions committed . . . by the defendant.'" Id. (quoting U.S.S.G. § 1B1.3(a)(1)(A)). This encompasses "conduct that is not formally charged or is not an element of the offense of conviction." U.S.S.G. § 1B1.3 cmt. background. Thus, the fact that Thomas specifically pled guilty to evading the assessment of taxes did not preclude the district court from including as relevant conduct any activities or omissions that are more properly considered evasion of the payment of a tax liability, such as those described in counts one and two of the

indictment.  See, e.g., United States v. McElroy, 587 F.3d 73, 88-89 (1st Cir. 2009) (holding that state tax loss from the evasion of state taxes can be included as "relevant conduct" in calculating total tax loss for federal sentencing purposes).  What we must determine is whether Thomas's evasive conduct for the years 1995-1996 can constitute "relevant conduct" for the purposes of Thomas's sentencing.[2]

When calculating the tax loss attributable to the offense, we liberally construe as relevant conduct "all conduct violating the tax laws . . . unless the evidence demonstrates that the conduct is clearly unrelated."  U.S.S.G. § 2T1.1 cmt. n.2; see also McElroy, 587 F.3d at 88 (approvingly citing other circuits' practice of determining relevant conduct based on whether the conduct in question was part of a "'common scheme or plan' and the same 'course of conduct'" as the offense of conviction).  There is ample evidence in the record to support the court's finding that Thomas willfully evaded the payment of his 1995 and 1996 taxes, thereby justifying the inclusion of penalties and interest.  For example, when the IRS sent him completed Substitutes for Return (SFRs)[3] after he failed to pay his taxes for those years, he

_____

[2] The government's assertion that Thomas waived this argument is not well-taken.  Thomas specifically alerted the district court to this objection, and the court recognized at sentencing that this argument was preserved for appeal.

[3] 26 U.S.C. § 6020(b)(1) authorizes the Secretary of the Treasury "to make a substitute tax return for any person who, for

refused to pay the assessed taxes, sending the IRS numerous letters stating that (1) he did not believe he had to pay income taxes and (2) he could find no law validly imposing tax liability on him. In addition to failing to file his 1995 and 1996 tax returns and actively working to prevent the IRS from <u>assessing</u> his taxes, he has also thus far failed to <u>pay</u> these taxes. In fact, before this court, Thomas is still attempting to escape from his obligation to pay these taxes, more than thirteen years after they came due. <u>See</u> <u>infra</u> Part II.B.

Though these acts alone most likely suffice to support a determination that Thomas willfully evaded tax payments, he engaged in numerous other acts of evasion that further support the district court's conclusion. For example, in 2000 he created a Nevada-based holding company, Three Crows Corporation, for his chiropractic business. He used that corporation to open a bank account in its name in which he deposited business receipts in an effort to hide that income. He also concealed his earnings by taking substantial cash withdrawals from his business account and purchasing cashier's checks. Even worse, Thomas's evasive conduct continued post-indictment. In 2006, he sold a piece of property for $89,000. Instead of using the proceeds to pay the taxes he owed, he put them into a newly created bank account in the name of Ichabod Trust, of

whatever reason, fails to make one on his own." <u>Geiselman</u> v. <u>United States</u>, 961 F.2d 1, 5 (1st Cir. 1992).

which his brother – who ironically was in the business of giving tax advice – served as the trustee. These actions clearly evidence Thomas's longstanding attempts to avoid not only the assessment, but also the payment, of his 1995 and 1996 tax liabilities.

Accordingly, because Thomas's evasion of the payment of taxes for 1995 and 1996 marked the beginning of his twelve years' odyssey of tax evasion, it is part of a common scheme and course of conduct with the offense of which he was convicted. Thus, the evasion of payment for 1995 and 1996 was relevant conduct in furtherance of the evasion of assessment for 2001, and the district court properly included the tax losses from those evasion-of-payment offenses in calculating Thomas's sentence. Moreover, as those offenses are payment offenses, the district court correctly included penalties and interest in calculating the tax loss resulting from them. U.S.S.G. § 2T1.1 cmt. n.1. The sentencing range was therefore appropriate.

B. Conditions of supervised release

Thomas also believes that the district court should not have ordered as a condition of supervised release that he file all delinquent tax returns and pay all back taxes. He argues that the former condition unnecessarily deprives him of liberty and that it fails to serve any identifiable deterrent interests. He contends that the latter condition constitutes a form of restitution and

-9-

cannot be imposed as a condition of supervised release. As we explain below, these arguments are unavailing.

## 1. Standard of review

We review the district court's imposition of supervised release conditions for abuse of discretion. United States v. Perazza-Mercado, 553 F.3d 65, 69 (1st Cir. 2009). The court has discretion to order "any . . . condition it considers to be appropriate," 18 U.S.C. § 3583(d), provided it "involves no greater deprivation of liberty than is reasonably necessary for the purposes" of deterrence, protection of the public from the defendant, and rehabilitation, id. § 3583(d)(2), and "is reasonably related" to these factors, id. § 3583(d)(1), and to "the nature and circumstances of the offense and the history and characteristics of the defendant," id. § 3553(a)(1). We have explained that "[t]he purposes of supervised release are the same as the purposes of sentencing generally," and include, in addition to the factors already mentioned, the need "'to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.'" Perazza-Mercado, 553 F.3d at 69 (quoting 18 U.S.C. § 3553(a)(2)(A)).

## 2. Obligation to file delinquent tax returns

On appeal, Thomas challenges the first condition of supervised release – that he "report to the IRS and file true and accurate returns for any delinquent years, including tax years

-10-

1995-2008, within 30 days of release [from] incarceration, or as otherwise directed by the supervising officer."

### a.   No undue deprivation of liberty

Thomas argues that the order to file tax returns for 1995 and 1996 constitutes a greater deprivation of liberty than is necessary because the exercise would be futile.  In support of this argument, Thomas notes that after he failed to file his tax returns for 1995 and 1996, the IRS filed SFRs determining his tax liability, which, if unpaid and unchallenged, the IRS would assess and insist that he satisfy.  Because Thomas failed to challenge the notice of deficiency, the IRS assessed the taxes owed and established his civil tax liability for those years.  He argues that because he cannot alter this settled determination, it would be futile for him to file returns for 1995 and 1996.  He also claims that in order to file the returns effectively he would unfairly have to obtain and review records that may no longer exist.  We disagree.

It is no deprivation of liberty to require that Thomas file his delinquent tax returns.  Indeed, Thomas, like most income-earning citizens, has a statutory obligation to file his returns and pay his taxes.  See 26 U.S.C. §§ 1, 6012(a).  We have previously held that district courts act appropriately if they "impos[e], as a condition of probation, that [defendants] file delinquent and future tax returns, as well as pay any tax due,"

-11-

because "this condition of probation mandates no more than the law requires." United States v. Huguenin, 30 F.3d 127, 1994 WL 390112, at *2 (1st Cir. 1994) (unpublished table decision). Those of our sister circuits to have addressed the issue are in accord.[4]

Thomas may or may not be correct that any returns that he files for 1995 and 1996 are rendered functionally irrelevant by the IRS's SFRs. See In re Colsen, 446 F.3d 836, 841 (8th Cir. 2006) (noting that the IRS "has found post-[SFR] returns useful" because they can result in a more accurate final assessment). Even assuming any returns he files will not alter his assessment, however, filing them would not be futile because his failure to do so remains a violation of federal law. 26 U.S.C. § 6012(a)(1)(A)(ii); see also United States v. Lacy, 658 F.2d 396, 397 (5th Cir. 1981) ("The action of the [IRS] in filing [an SFR] did not operate to relieve [the defendant] of responsibility for his failure to . . . fil[e] his tax returns personally."); In re Bergstrom, 949 F.2d 341, 343 (10th Cir. 1991) (same).

---

[4] See United States v. Miller, 557 F.3d 919, 921-22 (8th Cir. 2009); United States v. Braxtonbrown-Smith, 278 F.3d 1348, 1356 (D.C. Cir. 2002); United States v. Iverson, 100 F.3d 968, 1996 WL 656578, at *2 (10th Cir. 1996)(unpublished table decision); United States v. Hatchett, 918 F.2d 631, 644 (6th Cir. 1990); United States v. Schiff, 876 F.2d 272, 275 (2d Cir. 1989).

-12-

Moreover, the requirement that Thomas file his delinquent tax returns is consistent with 18 U.S.C. § 3583(d), which provides for the imposition of supervised released conditions that are, inter alia, reasonably related to the offense and the history of the defendant. We note that any difficulties that may arise from the age of the necessary documents or the passage of time are entirely self-inflicted; had he complied with his duty to file the returns when they were initially due, there would be no such troubles. His contention on appeal that this state of affairs amounts to a "burden" imposed by the district court is absurd, like killing your parents and complaining of being an orphan. It is worth recalling that "[v]irtually all conditions of supervised release restrict a defendant's liberty." United States v. Brown, 235 F.3d 2, 7 (1st Cir. 2000). We are convinced that the record here, "viewed as a whole, limns an adequate relationship between the nature and circumstances of the offense, the demonstrated propensities of the offender, and the special condition attached to the offender's release." Id. No more is necessary.

b. Legitimate sentencing purposes furthered

Thomas also argues that the requirement that he file tax returns for the years 1997-2003 serves no identifiable deterrent interest because he cannot be prosecuted for this omission due to the offense's six-year statute of limitations. See 26 U.S.C. § 6531(4). True, Thomas's guilty plea and the plea agreement in this

case bar any further criminal punishment for tax years 1995-2001. See U.S. Const. amend. V. However, we cannot agree with Thomas's conclusion that the lack of "further criminal liability or punishment" precludes any legitimate sentencing purpose in imposing a filing requirement for the years 1997-2003. The deterrent effect envisioned by Congress is both specific and general; that is, the conditions imposed may seek to deter either the individual defendant against whom they apply or all prospective offenders – in this case, tax scofflaws. See generally 18 U.S.C. § 3583(c) (pointing to general and specific deterrence as factors that a court "shall consider" in imposing conditions of supervised release). It may be preferable to accomplish both objectives simultaneously, but it is not obligatory. In any case, we find the requirement that Thomas file his delinquent returns to be consistent with the applicable statutes. See id. §§ 3553(a)(2), 3583(d); see also U.S.S.G. § 5D1.3(b).

### c. Not overly burdensome

Finally, Thomas asserts that the district court abused its discretion in requiring him to file delinquent tax returns for the years prior to 2006 because other, less burdensome conditions were available. He contends that his continued obligation to provide all financial information to his probation officer while on supervised release is one such condition. He claims that this duty ensures that a probation officer can monitor both his assets and

his compliance with his financial obligations. According to Thomas, this obligation leaves the issue of his civil tax liability to the "normal channels" of tax assessment and collection practices without causing any undue burden on him. He also believes that the condition that he not violate any federal, state, or local law precludes him from engaging in any future acts of tax evasion, including the evasion of payment, rendering this condition unnecessarily duplicative. Of course, this argument proves too much. To the extent the conditions are duplicative, they impose no additional burden. And to the extent, if any, they do impose an extra burden, that burden is necessary to ensure that Thomas finally pays the taxes he evaded.

Moreover, contrary to Thomas's implication, the challenged condition does not frustrate future policy decisions relating to the assessment and collection of taxes, which are properly left to the IRS. This conclusion is buttressed by the fact that the district court did not dictate the amount Thomas owed or set up a payment plan, which remain issues to be resolved between Thomas and the IRS. The court did not co-opt or supersede an administrative proceeding; it simply ordered Thomas to comply with any future administrative determinations. Furthermore, although the government does not consider it likely that Thomas will evade taxes in the future, the record is replete with evidence supporting the district court's determination that this condition

adequately addresses the varying considerations – of which specific deterrence is only one – that inform the propriety of supervised release conditions. See supra Part II.B.2.b.[5] There was no abuse of discretion.

### 3. Satisfaction of delinquent tax liability

The second condition of supervised release that Thomas challenges requires him to "satisfy his tax liability to the IRS and comply with any tax repayment schedule established by the IRS." On appeal, Thomas argues that this requirement actually constitutes an order to pay restitution instead of a condition of supervised release, and that the district court thus did not have the authority to impose the condition for years other than 2001 - the

---

[5] Among other things, the record contains evidence that Thomas did not pay his taxes for twelve years; that he took affirmative steps to conceal his income, such as deliberately failing to deposit all of his business payments, setting up a shell corporation in Nevada, and withdrawing large amounts of cash from his business operating account; and that he engaged in a lengthy procedural battle before the courts in which he advanced a variety of frivolous claims, including claims that the IRS had violated its own regulations and acted beyond its authority, and that he was not subject to federal tax laws. As explained above, this is more than enough to support the district court's decision to impose these conditions.

evasion count for which he pled guilty.[6]  For reasons we explain shortly, this argument is unavailing.

Thomas has already satisfied a $15,082.97 restitution order relating to his 2001 offense imposed by the district court. But this order was separate from the condition of supervised release imposing an obligation to pay back taxes.  As we have already said, it is settled that district courts may order defendants to pay back taxes as a condition of supervised release. See, e.g., Miller, 557 F.3d at 921-22 (collecting cases). Requiring Thomas to fulfill his statutory obligation to pay taxes is not tantamount to "restitution."  Restitution is, essentially, compensation for losses suffered as a result of a crime.  Black's Law Dictionary 1428 (9th ed. 2009); see also Hughey v. United States, 495 U.S. 411, 416 (1990) ("[T]he ordinary meaning of 'restitution' is restoring someone to a position he occupied before a particular event . . . ."); Charter Commc'ns Entertainment I, DST v. Burdulis, 460 F.3d 168, 182-83 (1st Cir. 2006) (explaining that one meaning of "restitution" refers to the "recover[y] from the defendants for all the damage they caused as a result of their

---

[6] In support of this argument, Thomas relies on Hughey v. United States, 495 U.S. 411 (1990), for the proposition that restitution may only be ordered "for the loss caused by the specific conduct that is the basis of the offense of conviction." Id. at 413.  This reliance is misplaced. In Hughey, the Supreme Court only addressed restitution, which, as we explain below, is distinct from the payment of an outstanding financial obligation.

[illegal act]"); <u>Chernin</u> v. <u>United States</u>, 149 F.3d 805, 816 (8th Cir. 1998) ("Black's Law Dictionary . . . defines restitution to mean the act [of] making good or giving an equivalent for or restoring something to the rightful owner.")(alteration and internal quotation marks omitted). The district court was not ordering Thomas to compensate the government for a loss suffered as a result of his criminal actions, though this is a salutary side-effect of its order. As Thomas himself repeatedly notes with apparent concern, the district court did not specify the amount that Thomas was to pay to the government. The court did not determine the exact amount he owed because it was ordering him to fulfill a duty, not to compensate the government.[7] Indeed, as for all law-abiding taxpayers, Thomas's statutory obligation to file returns and pay taxes is completely independent of his guilty plea in this case.

Lastly, we emphasize that the requirement that Thomas actually pay the taxes he evaded is reasonably related to his crime of tax evasion. <u>See</u> <u>Miller</u>, 557 F.3d at 921. In addition to the deterrent effect which we discussed above, the payments ordered by the district court will prevent Thomas from deriving any benefit from his past tax evasion and will protect the public fisc. The district court's decision to order Thomas to comply with the

---

[7] Thomas's counsel appears to have admitted this point at the sentencing hearing, saying that paying back taxes is "not paying restitution, because he's done that."

Internal Revenue Code's requirement that he pay his taxes was commensurate with his offense, did not constitute restitution, was not unjustly burdensome, and was therefore not an abuse of discretion.  Accordingly, we decline to disturb the challenged condition of supervised release.

### III. Conclusion

For the reasons set forth we **affirm** Thomas's sentence.

**SO ORDERED.**