FILED
United States Court of Appeals
Tenth Circuit

July 21, 2025

Christopher M. Wolpert
Clerk of Court

<u>PUBLISH</u>

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MICHAEL TROY KAY,

    Defendant - Appellant.

No. 24-4018

_____

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 1:22-CR-00087-DS-1)**

_____

Bretta Pirie, Assistant Federal Public Defender (Scott Keith Wilson, Federal Public Defender, with her on the briefs), Salt Lake City, Utah, for Defendant-Appellant.

Joseph Palmer, Assistant United States Attorney (Trina A. Higgins, United States Attorney, with him on the brief), Salt Lake City, Utah, for Plaintiff-Appellee.

_____

Before **HARTZ**, **KELLY**, and **ROSSMAN**, Circuit Judges.

_____

**ROSSMAN**, Circuit Judge.

_____

Appellant Michael Kay was convicted after pleading guilty to unlawfully possessing a firearm in violation of 18 U.S.C. § 922(g)(1). At sentencing, the district court found Mr. Kay had hidden the firearm in the trunk of his vehicle before his arrest, and over the defense's objection, imposed a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. Mr. Kay was ultimately sentenced to 27 months' imprisonment. On appeal, Mr. Kay challenges the imposition of the § 3C1.1 enhancement. He insists his pre-investigative conduct was not "likely to thwart" the investigation of the offense, as required by application note 1 in the commentary to § 3C1.1, so it could not serve as the factual basis for the enhancement. The district court rejected this argument. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

# I

## A[1]

On July 8, 2022, Mr. Kay was driving his car on a two-lane highway near Brigham City, Utah. His five-year-old son was in the back seat. At some point,

---

[1] We take these facts from the district court record, including Mr. Kay's amended Presentence Investigation Report (PSR)—to which the record reveals no objections—and testimony at Mr. Kay's sentencing hearing. As a point of clarification, only the amended PSR is included in the appellate record. The original PSR was not designated on appeal, but we take judicial notice of it. *See United States* v. *Smalls*, 605 F.3d 765, 768 n.2 (10th Cir. 2010) (taking judicial notice of a district court document not designated on appeal).

an SUV overtook Mr. Kay's vehicle. Mr. Kay drove up next to the SUV and pointed a gun at its occupants. Mr. Jacob Strickland was driving the SUV, and his wife, Ms. Natalie Strickland, sat in the front passenger seat. Mr. Strickland sped off and called 9-1-1.

Mr. Kay pulled onto the shoulder and stopped his car. The Stricklands had driven ahead of Mr. Kay, and they also pulled over to "see . . . what was going on." RII.38. Mr. Strickland, still in the driver's seat, "was on the phone with dispatch, relaying to them what was happening." RII.39. Ms. Strickland looked behind her and "saw the trunk of [Mr. Kay's] car open." RII.39. She could not see what Mr. Kay was doing, however.

Mr. Kay then pulled back onto the road and passed the Stricklands without engaging them. The Stricklands followed Mr. Kay for about 20 minutes. Mr. Strickland provided dispatch with information about Mr. Kay's location until police officers arrived at the scene.

An officer from the Perry City Police Department then pulled over Mr. Kay. Mr. Kay stuck both hands out of his car while holding a closed

---

The two PSRs appear substantively identical, except the amended PSR recommends the § 3C1.1 enhancement while the original PSR does not. Notably, however, the parties both indicate the original PSR recommended the § 3C1.1 enhancement. Op. Br. at 5; Ans. Br. at 6. That is incorrect. On our review, the obstruction enhancement was first sought by the government in its sentencing memorandum, which postdated the original PSR. RI.27. The docket also suggests the amended PSR was filed *after* the sentencing hearing. Nobody takes issue with this aspect of the procedural history, and neither do we.

3

pocketknife. The officer instructed Mr. Kay to drop the knife and exit his vehicle, and he did so. The officer then told Mr. Kay to turn around and keep his hands visible. Mr. Kay initially declined that instruction, but after the officer drew a firearm and repeated himself, Mr. Kay complied.

In response to law enforcement questioning, Mr. Kay admitted he and the Stricklands "had a road rage incident," but he denied a firearm was involved. RIII.15. Mr. Kay also consented to a search of his car, and officers found methamphetamine and an empty handgun magazine. Mr. Kay's son then told the officers that Mr. Kay had placed a gun in the trunk of his vehicle. The officers searched the trunk and discovered a gun underneath a cover and behind a spare tire. Mr. Kay denied owning any of the contraband discovered in his vehicle.

Mr. Kay was arrested at the scene. He had been prohibited from possessing a firearm due to his criminal history.

**B**

A federal grand jury in the District of Utah charged Mr. Kay with possessing a firearm as a convicted felon, under 18 U.S.C. § 922(g)(1) (Count I); possessing a firearm while subject to a protective order, under 18 U.S.C. § 922(g)(8) (Count II); and possessing methamphetamine, under 21 U.S.C. § 844(a) (Count III). Pursuant to a plea agreement, Mr. Kay pled guilty to

Count I, and the district court granted the government's motion to dismiss Counts II and III.

The probation office then prepared a Presentence Investigation Report (PSR). The PSR assigned Mr. Kay a criminal history category of II. The PSR identified a base offense level of 14 for possessing a firearm after a felony conviction in violation of § 922(g)(1), U.S.S.G. § 2K2.1(a)(6), and then recommended a four-level enhancement for possessing the firearm in connection with another felony offense, U.S.S.G. § 2K2.1(b)(6)(B), and a three-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1(a)–(b). This resulted in a total offense level of 15. Based on these calculations, the PSR recommended an advisory Guidelines sentencing range of 21 to 27 months' imprisonment. The record reveals no objections to the PSR.

The government filed a sentencing memorandum seeking a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. The government sought the enhancement because Mr. Kay's "obstructive conduct (namely pulling off the road to hide the firearm behind a spare tire in the trunk of the vehicle), was an unsuccessful, yet willful and purposefully calculated act, designed to thwart the investigation." RI.38.

Mr. Kay opposed the § 3C1.1 enhancement. In a written response, he pointed to application note 1 in the commentary, which instructs that pre-investigative obstructive conduct can serve as the factual basis for the

enhancement if it "was purposefully calculated, and likely, to thwart the investigation." U.S.S.G. § 3C1.1 cmt. n.1 (Note 1). Mr. Kay argued Note 1 counseled against enhancing his sentence because his conduct—merely "putting the gun in the trunk of the vehicle"—"was not calculated nor likely to thwart any investigation." RI.45.

The district court held a sentencing hearing. The government called Ms. Strickland to testify. The prosecutor explained, "[G]iven the United States' position on the [§ 3C1.1] enhancement, we'd like to . . . put that testimony on the record." RII.33–34. Ms. Strickland testified about the incident on the road with Mr. Kay.

The court also heard argument on whether to apply § 3C1.1. Both the government and Mr. Kay focused on whether Note 1 was satisfied—that is, whether Mr. Kay's conduct was "purposefully calculated" and "likely" to thwart the investigation. The government emphasized "when law enforcement approached [Mr. Kay], he initially denied that a firearm had been involved in the incident." RII.50. But then, law enforcement found the firearm "concealed, not just in the trunk of the car, but underneath a cover and partially tucked behind the spare tire." RII.50. The government thus took issue with Mr. Kay's

contention that his conduct was "not purposefully calculated and/or likely to thwart the investigation." RII.50.

According to defense counsel, "My client's actions may have been purposely calculated, but they were not likely to thwart an investigation." RII.59. Mr. Kay did not hide the gun "in a secret compartment," defense counsel insisted, but instead only "put[] it in the trunk." RII.59–60. Because "[o]fficers in the state of Utah are clearly trained to search very thoroughly[,] putting [a gun] in the trunk of the vehicle is not likely to thwart an investigation, and in fact, it did not." RII.60. Defense counsel compared the facts of Mr. Kay's case with the circumstances in *United States* v. *Anderson*, 674 F. App'x 799 (10th Cir. 2017) (unpublished). In *Anderson*, defense counsel explained, a "defendant . . . threw [a] gun into an alley" before an investigation had begun, which "is a lot more than Mr. Kay is supposed to have done," but even that conduct "was not indicated to be a basis for the enhancement." RII.60.

The district court imposed the § 3C1.1 enhancement. The court told defense counsel, "Your argument [that Mr. Kay's conduct was not likely to thwart an investigation under Note 1] may be well taken" if he had just "put[] the gun in the trunk."[2] RII.60. But the district court found Mr. Kay "hid it in

---

[2] The district court did not reference Note 1 when ruling from the bench, but the record confirms the court understood Mr. Kay's argument invoked that

the trunk." RII.60. The court also rejected Mr. Kay's reliance on *Anderson*. The court reasoned, "If you throw [a gun] in an alley," like the defendant did in *Anderson*, then "the gun would be in sight," but here, the gun "was hidden, it was not in sight." RII.60–61.

When the obstruction enhancement was applied, Mr. Kay's total offense level increased by two points:

| | |
|---|---|
| Base offense level, U.S.S.G. § 2K2.1(a)(6) | 14 |
| Connection with another felony offense, U.S.S.G. § 2K2.1(b)(6)(B) | +4 |
| Acceptance of responsibility, U.S.S.G. § 3E1.1(a)–(b) | -3 |
| Obstruction of justice, U.S.S.G. § 3C1.1 | +2 |
| **Total Offense Level:** | **17** |

section of the commentary. The government discussed the language of Note 1 in its sentencing memorandum, and the parties both focused on Note 1 at the sentencing hearing. *See* RI.36–38 (government memorandum citing Note 1 and then calling Mr. Kay's "conduct . . . an unsuccessful, yet willful and purposefully calculated act, designed to thwart the investigation"); RII.50 (government challenging Mr. Kay's "argument that somehow Mr. Kay's conduct was not purposefully calculated and/or likely to thwart the investigation"); RII.59 (Mr. Kay's counsel stating "[m]y client's actions may have been purposefully calculated, but they were not likely to thwart an investigation").

On appeal, the parties agree the district court was adjudicating Mr. Kay's Note 1 argument. *See* Op. Br. at 8 ("The district court analyzed the issue under the note 1 standard . . . ."); Op. Br. at 11 ("The district court correctly recognized that Mr. Kay's conduct occurred prior to investigation and would therefore only support an obstruction of justice enhancement if it was both purposefully calculated, and likely, to thwart the eventual investigation."); Ans. Br. at 21 ("The district court did not clearly err in finding that Kay's conduct was likely to thwart the investigation." (heading formatting omitted)).

8

With a criminal history category of II, Mr. Kay's advisory Guidelines range was 27 to 33 months' imprisonment. The court sentenced Mr. Kay to 27 months' imprisonment, followed by three years of supervised release. This timely appeal followed.

## II

### A

Mr. Kay contends the district court erred in applying the two-level obstruction enhancement under § 3C1.1. "A challenge to the application of a sentencing enhancement tests the 'procedural reasonableness' of a sentence, 'which requires, among other things, a properly calculated Guidelines range.'" *United States* v. *Cook*, 550 F.3d 1292, 1295 (10th Cir. 2008) (quoting *United States* v. *Smith*, 534 F.3d 1211 (10th Cir. 2008)). "Any error in the Guidelines calculation renders a sentence procedurally unreasonable and, if the error is not harmless, requires remand." *United States* v. *Scott*, 529 F.3d 1290, 1300 (10th Cir. 2008).

"[T]he overarching standard for our review of the procedural reasonableness of the court's sentence is abuse of discretion." *United States* v. *Nkome*, 987 F.3d 1262, 1268 (10th Cir. 2021). But "[t]his standard is not monolithic." *Id.* (alteration in original) (quoting *United States* v. *Arias-Mercedes*, 901 F.3d 1, 5 (1st Cir. 2018)). "When considering a challenge to an application of the Sentencing Guidelines, we review a district court's legal

interpretation of the Guidelines de novo and its factual findings for clear error." *Smith*, 534 F.3d at 1226. "The government has the burden of proving by a preponderance of the evidence any findings necessary to support a sentence enhancement." *United States* v. *Gambino-Zavala*, 539 F.3d 1221, 1228 (10th Cir. 2008).

> The enhancement at issue here, from U.S.S.G. § 3C1.1, applies when
>
> (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense . . . .

As discussed, Note 1 states "[o]bstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." *Id.* cmt. n.1.

The Sentencing Commission added this language to Note 1 in 2006 to "address[] a circuit conflict regarding the issue of whether pre-investigative conduct can form the basis of an adjustment under §3C1.1." U.S.S.G. supp. to app. C, amend. 693 (2006). The amendment "adopt[ed] the majority view," and "permit[ted] application of the guideline to obstructive conduct that occurs prior to the start of the investigation of the instant offense of conviction by allowing the court to consider such conduct if it was purposefully calculated,

and likely, to thwart the investigation or prosecution of the offense of conviction." *Id.*[3] In precedent that predates the 2006 amendment, we took the position that the § 3C1.1 enhancement could sometimes be based on pre-investigative obstructive conduct. *See United States* v. *Mills*, 194 F.3d 1108, 1115 (10th Cir. 1999) ("[A]wareness of an impending investigation is sufficient to satisfy the nexus requirement so as to warrant enhancement.").

We have not considered this language in Note 1 in a published opinion since the commentary was amended. "Guidelines commentary 'governs unless it "run[s] afoul of the Constitution or a federal statute" or is "plainly erroneous or inconsistent" with the guideline provision it interprets.'" *United States* v. *Tony*, 121 F.4th 56, 62 (10th Cir. 2024) (alteration in original) (quoting *United States* v. *Maloid*, 71 F.4th 795, 805 (10th Cir. 2023)). And "amended commentary is binding on the federal courts" notwithstanding our "prior judicial constructions of a particular guideline." *Stinson* v. *United States*, 508 U.S. 36, 46 (1993). Note 1 explains when a court can use pre-investigative

---

[3] The 2006 amendment also changed the text of § 3C1.1, replacing "during the course of" the investigation with "with respect to" the investigation. U.S.S.G. supp. to app. C, amend. 693 (2006); *see United States* v. *Rising Sun*, 522 F.3d 989, 996 (9th Cir. 2008) (explaining that "in 2006 the Sentencing Commission amended this Guideline to remove the temporal dimension from § 3C1.1").

conduct as the basis for an adjustment under § 3C1.1.[4] As relevant here, a court may impose the § 3C1.1 enhancement based on pre-investigative conduct that was "purposefully calculated, and likely" to thwart the investigation of the offense. U.S.S.G. § 3C1.1 cmt. n.1.

Whether conduct is "likely to obstruct [an] investigation," the government maintains, "is the kind of fact-specific question" reviewed for clear error. Ans. Br. at 28; *see Smith*, 534 F.3d at 1226. Mr. Kay does not meaningfully dispute this assertion, contending only "the facts of [his] case don't warrant the enhancement whatever the standard of review." Reply Br. at 8 n.4. We thus proceed on the understanding that whether conduct was "likely to thwart" an investigation, under Note 1, is a factual finding reviewed under the clear error standard. Factual findings "are clearly erroneous if they are without factual support in the record or if the court is left with a definite and firm conviction that a mistake has been made." *United States* v. *Robertson*, 946 F.3d 1168, 1171 (10th Cir. 2020). "To constitute clear error, we must be convinced that the sentencing court's finding is simply not plausible or permissible in light of the entire record on appeal, remembering that we are not free to substitute our judgment for that of the district judge." *Cook*, 550 F.3d at 1295 (citation omitted).

---

[4] Nobody suggests Note 1 is not "authoritative." *Stinson* v. *United States*, 508 U.S. 36, 38 (1993).

**B**

**1**

Mr. Kay argues the district court's decision was "untenable in light of the plain language of note 1 and the case law interpreting it." Op. Br. at 12. Recall, Note 1 says pre-investigative obstructive conduct "may be covered" by § 3C1.1 "if the conduct was purposefully calculated, and likely, to thwart the investigation . . . of the offense of conviction." On appeal, Mr. Kay concedes he hid the firearm in his trunk before law enforcement arrived at the scene, and thus does not challenge that his pre-investigative conduct was "purposefully calculated." *See* RII.59 ("My client's actions may have been purposely calculated . . . ."); RII.60 (Mr. Kay's counsel conceding "he hid" the firearm).

Mr. Kay primarily contends, even if he acted with the purpose of obstructing justice, his conduct cannot support the enhancement because it was not "likely" to thwart an investigation into the offense of conviction. Op. Br. at 10. According to Mr. Kay, "Officers knew from the Stricklands that Mr. Kay had brandished a gun a few minutes before officers stopped him," and that he "pull[ed] over and open[ed] the trunk" shortly after the incident. Op. Br. at 19; *see* Op. Br. at 16–17. Mr. Kay emphasizes he "consent[ed] to [a] law enforcement search of his vehicle," and "his 5-year-old son . . . told law enforcement exactly where to find" the gun. Op. Br. at 10, 17. He further suggests "the officers developed probable cause to search the trunk when they

13

found drugs in the passenger compartment," and at that point, they were likely to "search[] the trunk and discover[] the gun." Reply Br. at 25–26. For these reasons, Mr. Kay contends, "No matter how well hidden in the trunk the gun may have been—and it wasn't particularly well hidden—it was never likely to thwart the investigation that ensued." Op. Br. at 19. Rather, he insists "the gun's discovery . . . was inevitable." Op. Br. at 17 (heading formatting omitted). We are not persuaded.

The record amply supports the district court's finding that the gun "was hidden, it was not in sight." RII.60–61. The government correctly points out that Mr. Kay hid the firearm "behind three separate barriers"—in the trunk, underneath a cover, and behind a spare tire. Ans. Br. at 9. And, contrary to Mr. Kay's position, the record shows the officers were not necessarily going to search his car—let alone the trunk. The Stricklands saw Mr. Kay open his trunk, but they did not see him hide the firearm. Mr. Kay may not have consented to a search of his car, as he ultimately did. Importantly, officers did not turn to the trunk until after Mr. Kay's son directed them there.

On this front, *United States* v. *Fleming* is instructive. No. 22-10275, 2023 WL 8449192 (9th Cir. Dec. 6, 2023) (unpublished).[5] There, following a

---

[5] We find this unpublished, out-of-circuit authority instructive because it discusses the precise commentary note before us under similar factual circumstances.

motorcycle accident, the defendant "asked a bystander to hide his loaded firearm for him before the police arrived at the scene. When the police arrived, the bystander alerted them to the firearm, which the bystander had placed along the guardrail." *Id.* at *1. The district court applied the § 3C1.1 enhancement, and the defendant appealed. *Id.* The Ninth Circuit affirmed. *Id.* The court of appeals concluded the defendant's conduct—asking the bystander to hide his firearm—was "likely to thwart the police's investigation into his possession of a firearm loaded with ammunition. Had the bystander not relayed [the defendant's] statement and directed the police to the gun, the police would have had no reason to search along the guardrail for a firearm let alone connect any such firearm to [the defendant]." *Id.* at *2. Similarly, had Mr. Kay's son never directed the police to the trunk, the police may never have searched it. The record thus permits the conclusion that, at the time Mr. Kay hid the gun in the trunk, it was not at all inevitable that the officers would have discovered it.

To be sure, Mr. Kay's view of the facts—that the officers were always likely to find his firearm hidden in the trunk—might be a plausible one in the abstract. But our focus is on whether the sentencing court's finding was "plausible or permissible in light of the entire record." *Cook*, 550 F.3d at 1295 (quotation omitted). And here, it was. We discern no clear error in the district court's decision to impose the obstruction enhancement under § 3C1.1.

15

**2**

Mr. Kay's contrary arguments are not persuasive. First*,* Mr. Kay contends that determining whether pre-investigative conduct is "likely to thwart" an investigation must be determined by reference to how the "investigation . . . unfolded." Reply Br. at 23. Mr. Kay seems to suggest that, if the conduct did not actually obstruct the investigation, then it was not likely to thwart it. If Mr. Kay were right, says the government, then "the enhancement would be inapplicable in every case where the police ultimately discover the hidden evidence." Ans. Br. at 24–25. We agree with the government and reject Mr. Kay's argument.

Note 1 does not define what "likely to thwart" means. We typically look to the plain language of the Guidelines commentary to interpret its meaning. *See United States* v. *Farrow*, 277 F.3d 1260, 1266 (10th Cir. 2002) (interpreting "the plain language of the commentary"); *see also United States* v. *Marrufo*, 661 F.3d 1204, 1207 (10th Cir. 2011) ("When a term is not defined in the Guidelines, we give it its plain meaning."). The plain meaning of the word "likely" is "possessing or displaying the qualities or characteristics that make something probable." *Likely*, *American Heritage Dictionary* (4th ed. 2006). Likely to thwart, therefore, cannot mean actually thwarted, as Mr. Kay's argument suggests. Further, when the Commission has intended to limit the application of § 3C1.1 to successful obstruction, it has done so expressly. *See*

16

U.S.S.G. § 3C1.1 cmt. n.4(D) (explaining certain conduct "shall not, standing alone, be sufficient . . . *unless it results in a material hindrance*" (emphasis added)).

Next, Mr. Kay again relies on *Anderson*, the unpublished decision he discussed at the sentencing hearing.[6] In *Anderson*, a defendant "threw [a] Glock handgun in an alley," and then "retrieved the gun" and "asked [a friend] to hide it for him." 674 F. App'x at 800. The district court applied the § 3C1.1 enhancement, and a panel of this court affirmed—but in doing so, neither relied on the defendant's initial act of throwing the gun into the alley. *See id.* at 800–02; Op. Br. at 14. Mr. Kay contends *Anderson* "excluded the initial hiding of the gun as a basis for the enhancement," meaning his conduct demands the same treatment. Op. Br. at 14 n.3; *see* Op. Br. at 17.

*Anderson* does not support reversal. First, *Anderson* does not stand for the proposition that the defendant's initial conduct—tossing the gun into the alley—would not have supported the enhancement. "[T]hat [*Anderson*] focused on the defendant's subsequent delivery of the gun to his friend, rather than on the earlier toss into the alley," the government explains, "in no way establishes that the earlier conduct was insufficient." Ans. Br. at 27. Second, unlike Mr.

---

[6] We cite this unpublished case for its persuasive value only. *See* 10th Cir. R. 32.1 ("Unpublished decisions are not precedential, but may be cited for their persuasive value."); Fed. R. App. P. 32.1.

17

Kay, the defendant in *Anderson* did not even raise an argument based on Note 1. *See* 674 F. App'x at 800–02 (the defendant raising an argument under "application note 4(d)"). We agree with the government that *Anderson* simply "did not . . . analyze whether the conduct was 'likely' to thwart the investigation." Ans. Br. at 27. Third, at Mr. Kay's sentencing hearing, the district court appropriately distinguished the facts of *Anderson*—where the gun in the alley was "in sight"—from the facts here—where the gun in the trunk "was hidden." RII.60–61; *see* Ans. Br. at 27.

Finally, Mr. Kay points to two published opinions where our sister circuits affirmed enhancements under § 3C1.1, which he says are instructive by contrast. *See* Op. Br. at 14–15 (citing *United States* v. *Montanari*, 863 F.3d 775 (8th Cir. 2017); *United States* v. *Waguespack*, 935 F.3d 322 (5th Cir. 2019)). In *Montanari*, the defendant's pre-investigative conduct involved submitting false information to the IRS. *See* 863 F.3d at 777, 781. In *Waguespack*, the defendant's pre-investigative conduct involved obscuring his computer activity with sophisticated technology. *See* 935 F.3d at 327, 336. Mr. Kay insists "[w]hile the defendants' pre-investigation conduct in *Montanari* and *Waguespack* supports the conclusion that their actions were likely to thwart an investigation, Mr. Kay's actions do just the opposite." Op. Br. at 16. These decisions are too fact bound to be helpful to Mr. Kay. As the government aptly puts it, "[T]he fact that other courts have applied the enhancement to

18

defendants who obstructed justice more effectively than Kay does not undermine the district court's finding that Kay's conduct was sufficient to warrant the enhancement." Ans. Br. at 28.[7]

## III

We **AFFIRM** Mr. Kay's sentence.

---

[7] Given our disposition, we need not consider the government's suggestion that pre-investigative conduct can still trigger the enhancement even if it is not purposefully calculated and likely to thwart the investigation. *See* Ans. Br. at 22 (arguing the enhancement could apply under commentary note 4, without acknowledging Note 1). We doubt such an argument would succeed as a matter of law, however, in light of the plain text of the Guideline and Note 1, as well as the amendment history. *See United States* v. *Guevara*, 894 F.3d 1301, 1311 (11th Cir. 2018) ("The enhancement may apply to conduct that occurred prior to the start of the investigation . . . *only if* the conduct was 'purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction.'" (emphasis added) (quoting Note 1)). We also need not consider the government's argument that Mr. Kay "hid his gun after the investigation had already started." Ans. Br. at 14.