In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 13-3908

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

REX BLACK,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 06 CR 00219 — **James F. Holderman**, *Judge.*

---

ARGUED FEBRUARY 11, 2015 — DECIDED AUGUST 17, 2015
AMENDED MARCH 7, 2016[*]

---

Before FLAUM, WILLIAMS, and HAMILTON, *Circuit Judges.*

---

[*] The opinion in this case was originally published on August 17,
2015. Thereafter, the government filed a petition for rehearing. The panel
grants the petition, and this revised opinion is substituted for the opinion
published on August 17, 2015.

WILLIAMS, *Circuit Judge.* Rex Black repeatedly tried to pay off a more than $5 million tax debt with checks drawn on checking accounts that he knew were closed to prevent the Internal Revenue Service ("IRS") from collecting taxes from him. A jury convicted Black of one count of obstructing and impeding the IRS from collecting taxes and four counts of passing and presenting fictitious financial instruments with intent to defraud. The district court sentenced Black to 71 months in prison. Black now appeals arguing that the district court erred in determining his sentencing range under the United States Sentencing Guidelines ("U.S.S.G.") § 2T1.1, improperly calculating the tax loss by aggregating the face value of the fraudulent checks. We agree, the district court misinterpreted and misapplied the tax loss definition to the facts of this case. Additionally, we conclude, contrary to Black's assertions, that penalties and interest may be included in the tax loss calculation, and the district court did not err by failing to consider audit errors and apply available deductions because Black could not establish that he was entitled to any reduction in taxes owed. Therefore, we vacate Black's sentence and remand for resentencing.

## I. BACKGROUND

In 2000, the IRS conducted an audit of Black's income for tax years 1997 and 1998 (the "2000 Audit"). After the IRS completed the audit, it assessed approximately $3.89 million in taxes, penalties, and interest (approximately $2.2 million in taxes alone). Black did not pay the amount due, and additional penalties and interest accrued.

Beginning in October 2002, the IRS filed a series of liens on various properties owned by Black to secure payment of Black's tax debt. In response to each lien, Black submitted to

the IRS a fraudulent check or registered bill of exchange[1] to extinguish the lien and satisfy his tax debt. For example, in October 2002, the IRS filed the first lien to satisfy the tax debt in the amount of $4,856,895.49. That same month, Black submitted a check drawn on a closed account in the full amount to the IRS. This pattern continued.

Between November 2002 and August 2003, the IRS filed liens for $1,467,168.33, $1,417,804.18, and $4,954,049.40, and Black sent the IRS a fraudulent check or bill of exchange in the lien amount. At some point, the IRS assessed $505,993.68 for additional penalties and interest, and Black sent the IRS a bad check for that amount too.

The government charged Black with one count under 26 U.S.C. § 7212(a) for corruptly obstructing and impeding the IRS in its collection of taxes, penalties, and interest (Count 1) and three counts under 18 U.S.C. § 514(a)(3) for passing or presenting the United States with fictitious instruments appearing to be financial instruments with the intent to defraud (Counts 2, 4–5). Count 3 is not relevant to the appeal. The jury found Black guilty of all counts.

Before Black's sentencing hearing, the district court issued an order resolving issues related to Black's sentencing guideline range. First, it grouped Counts 1, 2, 4, and 5 for guideline purposes (collectively, the "group 1 offenses"). Next, it determined that the applicable guideline provision was U.S.S.G. § 2T1.1 and found that the offense level under this guideline "is determined on the basis of Black's intend-

---

[1] The fraudulent bills of exchange in this case are financial instruments that appear to draw on an account at the U.S. Department of Treasury in Black's name.

ed amount of monetary loss to the IRS that was the object of
Black's criminal conduct." The district court also found that
the guidelines required him to aggregate the value of the
fraudulent documents, so it added the face value of each
check and bill of exchange Black submitted to the IRS. From
this calculation, the district court determined that the tax
loss was over $14 million. It recognized that this amount in-
cluded the taxes, penalties, and interest Black owed. Using
the U.S.S.G. § 2T4.1 tax loss table that applies to § 2T1.1, the
district court determined that the tax loss applicable to
Black's criminal conduct was more than $7 million but less
than $20 million, resulting in a base offense level of 26. Be-
cause Black was also convicted of Count 3, the guidelines
required the district court to increase the offense level by one
point. The resulting base offense level was 27, which pro-
vides for a sentencing range of 70 to 87 months. At the sen-
tencing hearing, the district court considered the advisory
guidelines range along with the factors set forth in 18 U.S.C.
§ 3553 and sentenced Black to 71 months' imprisonment.

## II. ANALYSIS

On appeal, Black attacks the district court's application of
U.S.S.G. § 2T1.1. Specifically, he argues that the district court
made three errors in calculating the amount of tax loss under
U.S.S.G. § 2T1.1: (1) aggregating the face value of the checks
and bills of exchange; (2) including penalties and interest;
and (3) failing to correct audit errors and apply available de-
ductions. He concludes that these errors resulted in an incor-
rect base offense level.

When reviewing a sentence, we must first check to see if
the district court committed a significant procedural error,
such as improperly calculating the guidelines range, treating

the guidelines as mandatory, or selecting a sentence based on clearly erroneous facts. *United States v. Abbas*, 560 F.3d 660, 666 (7th Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). If we determine that no procedural errors occurred, we consider whether the sentence is substantively reasonable. *United States v. Garcia*, 754 F.3d 460, 483 (7th Cir. 2014).

We review the sentencing court's legal interpretation and application of the sentencing guidelines de novo. *United States v. Jackson*, 410 F.3d 939, 941 (7th Cir. 2005). We review the district court's tax loss calculation for clear error. *United States v. Williams-Ogletree*, 752 F.3d 658, 662 (7th Cir. 2014). "To show clear error a defendant 'must show that the district court's calculation was not only inaccurate but outside the realm of permissible computations.'" *Id.* (quoting *United States v. Al-Shahin*, 474 F.3d 941, 950 (7th Cir. 2007)).

## A. Definition and Application of Tax Loss

First, Black argues that the district court improperly calculated the tax loss amount by aggregating the amount of each fraudulent check and bill of exchange that he attempted to pass. The government argues that the guidelines required the district court to aggregate the tax loss amount. We agree with Black that the district court did not properly calculate the tax loss amount. However, the error arose in the first instance from the district court's interpretation and misapplication of the tax loss definition to the facts of this case, not from any aggregation principle.

The district court determined that the tax loss amount was more than $7 million but less than $20 million, based on an intended loss amount of over $14 million, which is the

cumulative amount of each fraudulent check and bill of ex-
change Black attempted to pass. This tax loss figure resulted
in a base offense level of 26. To arrive at this figure, the dis-
trict court determined that § 2T1.1(c)(1) provided the appli-
cable definition of tax loss. This guideline states:

> If the offense involved tax evasion or a fraudu-
> lent or false return, statement or other docu-
> ment, the tax loss is the total amount of loss
> that was the object of the offense (i.e., the loss
> that would have resulted had the offense been
> successfully completed).

U.S.S.G. § 2T1.1(c)(1) (2013). But using this tax loss defini-
tion, the district court's calculation was incorrect.

In this circuit, "[w]e take the phrase 'the object of the of-
fense' to mean that the attempted or intended loss, rather
than the actual loss to the government, is the proper basis of
the tax-loss figure." *United States v. Chavin*, 316 F.3d 666, 677
(7th Cir. 2002). Here, the object of Black's offense was the
amount of money that he attempted to avoid paying, which
is the actual amount of taxes, penalties, and interest that was
due. Black owed the IRS unpaid taxes for 1997 and 1998 plus
penalties and interest. The IRS filed a lien to satisfy the tax
debt in the amount of $4,856,895.49. Black wrote a bad check
in this amount. The IRS notified Black that he owed an addi-
tional $505,993.68 in penalties and interest, and Black wrote
a bad check for this amount. At that point, Black owed the
IRS $5,362,889.17. Diligent in its collection efforts, the IRS
filed three additional liens for $1,467,168.33, $1,417,804.18,
and $4,954,049.40—all to collect the same $5.3 million Black
owed. Black responded by writing two bad checks and two
fraudulent bills of exchange to satisfy the tax liens. The dis-

trict court added the face value of each fraudulent instrument submitted to the IRS to determine the tax loss was over $14 million. Doing so was improper under § 2T1.1. From the record, it appears that the tax loss was only approximately $5.3 million.

Section 2T1.1 defines tax loss in various ways, as detailed below.

> For the purposes of this guideline –
>
> (1) If the offense involved tax evasion or a fraudulent or false return, statement, or other document, the tax loss is the total amount of loss that was the object of the offense (i.e., the loss that would have resulted had the offense been successfully completed).
>
> > Notes:
> >
> > (A) If the offense involved filing a tax return in which gross income was underreported, the tax loss shall be treated as equal to 28% of the unreported gross income (34% if the taxpayer is a corporation) plus 100% of any false credits claimed against tax, unless a more accurate determination of the tax loss can be made.
> >
> > (B) If the offense involved improperly claiming a deduction or an exemption, the tax loss shall be treated as equal to 28% of the amount of the improperly claimed deduction or exemption (34% if the taxpayer is a corporation) plus 100% of any false credits claimed against tax, unless a more

accurate determination of the tax loss can be made.

…

(2) If the offense involved failure to file a tax return, the tax loss is the amount of tax that the taxpayer owed and did not pay.

Notes:

(A) If the offense involved failure to file a tax return, the tax loss shall be treated as equal to 20% of the gross income (25% if the taxpayer is a corporation) less any tax withheld or otherwise paid, unless a more accurate determination of the tax loss can be made.

…

(3) If the offense involved willful failure to pay tax, the tax loss is the amount of tax that the taxpayer owed and did not pay.

(4) If the offense involved improperly claiming a refund to which the claimant was not entitled, the tax loss is the amount of the claimed refund to which the claimant was not entitled.

U.S.S.G. § 2T1.1. When reading § 2T1.1's definitions of tax loss as a whole, we understand each definition of tax loss to reflect the tax revenue that the government was owed but did not receive due to a defendant's criminal conduct. *See* § 2T1.1(c)(1)–(4); *accord United States v. Gordon*, 291 F.3d 181, 187 (2d Cir. 2002) ("Tax loss under § 2T1.1 is intended to re-

flect the revenue loss to the government from defendant's behavior.").

The district court could have determined § 2B1.1, the general fraud guideline, applied to Black's convictions. Section 2B1.1 deals with "loss," which we will refer to as "general loss," not "tax loss." This section defines general loss in the following ways.

> (i) Actual Loss.—"Actual loss" means the reasonably foreseeable pecuniary harm that resulted from the offense.

> (ii) Intended Loss.—"Intended loss" (I) means the pecuniary harm that was intended to result from the offense; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur (e.g., as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value).

U.S.S.G. § 2B1.1 cmt. n.3(A). Unlike the tax fraud guideline, § 2T1.1, the general fraud guideline, § 2B1.1, defines "intended loss" to include monetary "harm that would have been impossible or unlikely to occur (e.g., … an insurance fraud in which the claim exceeded the insured value)." U.S.S.G. § 2B1.1 cmt. n.3(A)(ii).

Three of Black's relevant convictions were under 18 U.S.C. § 514 for presenting the U.S. government with a check or a bill of exchange with intent to defraud, and the guidelines state that § 2B1.1 is applicable to convictions under 18 U.S.C. § 514. Under § 2B1.1, in a typical case involving passing fraudulent checks, district courts routinely calculate a general loss amount by adding the value of each check.

Here, however, the district court did not choose to proceed under § 2B1.1, which changed the parameters of its tax loss calculation.

All parties agreed that § 2T1.1 was the appropriate guideline in this case. (No party challenged the propriety of using this guideline on appeal.) As a result, the district court proceeded under § 2T1.1. This guideline required the district court to calculate loss by the *tax loss* the IRS incurred or could have incurred, not the *general loss*, which the general fraud guideline defines as monetary harm that did result or could have resulted from attempts to pass bad checks. *Compare* U.S.S.G. § 2T1.1(c)(1) (defining tax loss in various ways corresponding to the amount of tax revenue the IRS was owed and did not receive), *with* § 2B1.1 cmt. n.3 (defining loss as the reasonably foreseeable pecuniary harm that resulted from the offense or "the pecuniary harm that was intended to result from the offense," even if such harm would have been impossible or unlikely to occur). By reviewing the face value of the checks and aggregating these amounts, the district court considered the general loss—the monetary harm that the IRS could have faced—not the tax loss. As stated above, tax loss reflects the tax revenue that the government was owed but did not receive due to a defendant's criminal conduct. Therefore, under these facts, the tax loss cannot exceed the $5.3 million that the evidence shows Black owed the IRS.

**B. Penalties and Interest Should Not Have Been Included in the Tax Loss Calculation.**

In its order, the district court stated "[t]he loss Black intended the IRS to suffer had Black's offense been successfully completed included the loss of the penalties and interest

Black owed the IRS, as well as the taxes he owed." It included a footnote in its order that stated,

> Even though Black's criminal statute of conviction was 26 U.S.C. § 7212(a) not [§§] 7201 or 7203, the evidence at trial established beyond a reasonable doubt that the object of Black's criminal conduct in committing the offenses … was to defraud the IRS by willfully failing to pay and willfully evading his payment of his debt obligations to the IRS, which included the penalties and interest, as well as the taxes that Black owed to the IRS.

The district court included penalties and interest in the tax loss calculation and did so because Black's conduct was similar to conduct criminalized by § 7201 and § 7203.

Black argues that the tax loss calculation under U.S.S.G. § 2T1.1 should not include penalties and interest as part of the tax loss calculation. He specifically argues that penalties and interest should not be included in the tax loss calculation because he was not charged or convicted of willful evasion under 26 U.S.C. § 7201 or willful failure to pay under § 7203.

The government argues that the issue of whether Black's tax loss calculation included penalties and interest is not properly before the court because the district court based the tax loss amount on the face value of the fraudulent checks, not the amount of taxes Black owed. As stated above, the face value of the checks was not the correct tax loss. Moreover, the record establishes that the district court included penalties and interest in its tax loss calculation.

The general rule is that the tax loss calculation "does not include interest or penalties." U.S.S.G. § 2T1.1 cmt. n.1. There is a narrow exception to this general rule for "willful evasion of payment cases under 26 U.S.C. § 7201 and willful failure to pay cases under 26 U.S.C. § 7203." *Id*. To determine whether penalties and interest should be included in the tax loss calculation, we must determine to which types of cases the exception applies.

Relying on U.S.S.G. § 1B1.3 cmt. n.6 and *United States v. Thomas*, 635 F.3d 13 (1st Cir. 2011), the government argues that U.S.S.G. § 2T1.1 cmt. n.1 does not limit the inclusion of penalties and interest to defendants convicted of willful evasion of payment under § 7201 or willful failure to pay under § 7203. It further argues that penalties and interest should be included in the tax loss calculation "in any case where defendant's conduct—offense, relevant, or stipulated, as admitted in a plea agreement, proven at trial, or established by a preponderance of the evidence at sentencing—constituted willful evasion of payment, as defined by 26 U.S.C. § 7201, or willful failure to pay, as defined by 26 U.S.C. § 7203."

Application Note 6 to U.S.S.G. § 1B1.3 provides guidance on how to interpret a section of the guidelines that, like § 2T1.1 cmt. n.1, directs that a principle be applied to conduct in light of a specific statute. Specifically, it instructs:

> A particular guideline (in the base offense level or in a specific offense characteristic) may expressly direct that a particular factor be applied only if the defendant was convicted of a particular statute. For example, in § 2S1.1 (Laundering of Monetary Instruments; Engaging in Monetary Transactions in Property Derived

> from Unlawful Activity), subsection (b)(2)(B) applies if the defendant "was convicted under 18 U.S.C. § 1956". Unless such an express direction is included, conviction under the statute is not required. Thus, use of a statutory reference to describe a particular set of circumstances does not require a conviction under the referenced statute. An example of this usage is found in §2 A3.4(a)(2) ("if the offense involved conduct described in 18 U.S.C. § 2242").

U.S.S.G. 1B1.3 cmt. n.6. Because U.S.S.G. § 2T1.1 cmt. n.1 does not expressly direct the court to exclude penalties and interest if the defendant was *convicted* under 26 U.S.C. §§ 7201 or 7203, a conviction under one of these statutes is not required for the court to include penalties and interest. While a conviction is not required, what makes a case a case "under" 26 U.S.C. §§ 7201 and 7203?

In *Thomas*, the grand jury returned a six-count indictment against the defendant. Counts 1 and 2 charged the defendant with willfully attempting to evade the payment of taxes, in 1995 and 1996, respectively, under 26 U.S.C. § 7201 and Counts 3 through 6 charged the defendant with willfully attempting to evade the assessment of taxes also under 26 U.S.C. § 7201. Indictment, *United States v. Thomas*, No. 06 CR 00004, ECF No. 1 (D. Me. Jan. 11, 2006). The defendant pleaded guilty to one count of willful attempt to evade assessment of taxes. *Thomas*, 635 F.3d at 16. The district court included penalties and interest in the tax loss calculation used to determine his offense level. *Id.* On appeal the defendant argued that the district court should not have included penalties and interest because he evaded *assessment*,

not payment of the tax, and that note 1 to U.S.S.G. § 2T1.1 concerns only willful evasion of *payment* cases under § 7201. *Id.* at 17. The First Circuit found that the fact the defendant pleaded guilty only to willful evasion of the assessment of taxes did not preclude the district court from considering as relevant conduct actions the defendant took that were evasion of the payment of taxes. *Id.* Finding that the defendant willfully evaded payment of taxes in 1995 and 1996 (Counts 1 and 2) in furtherance of his evasion of the assessment of taxes, the First Circuit concluded that the district court properly included penalties and interest. *Id.* at 17–18.

We find *Thomas* persuasive and conclude that the statutory reference in U.S.S.G. § 2T1.1 n.1 does not require a charge or conviction to be applicable to a defendant's case. Admittedly, it is not clear whether the "cases under 26 U.S.C. § 7201 or § 7203" requires at least a charge, but the absence of a statement in the guidelines asserting that the indictment must contain a charge under either statute supports our interpretation. Moreover, the tax loss definition instructs the court to look to the object of the offense. U.S.S.G. § 2T1.1(c)(1). If the object of the offense is to avoid the tax, penalties, and interest, then penalties and interest should be included in the tax loss. The district court found that the evidence established beyond a reasonable doubt that Black intended to defraud the IRS by willfully failing to pay and willfully evading payment of the taxes he owed the IRS, a conclusion Black does not challenge. Since the conduct was tantamount to 26 U.S.C. § 7201 and § 7203 conduct, the district court may include penalties and interest in the tax loss calculation.

**C. Black Failed to Meet His Burden to Establish He Was Entitled to a Tax Loss Reduction Due to Audit Errors and Available Deductions.**

Black also argues that the tax loss calculation was erroneous because it was derived from the 2000 Audit which contained an overstatement of Black's income and failed to credit Black for legitimate deductions. He further argues that it was the government's burden to prove the loss amount.

The district court determined that Black failed to follow the appropriate procedures to appeal the IRS's audit determination and thus waived his right to assert unclaimed deductions, relying on *Chavin*, 316 F.3d at 677–78. It also determined that: (1) the deductions were unrelated to the tax offenses of which the jury found Black guilty, and (2) Black's failure to cooperate with the IRS during the audit process made it so that the accuracy of the deductions was not reasonably ascertainable at the time of Black's sentencing.

In *Chavin*, we held that district courts should not consider unclaimed, legitimate deductions when calculating tax loss under § 2T1.1. 316 F.3d at 677–79. The U.S. Sentencing Commission disagreed and issued an amendment to § 2T1.1 to "reflect the Commission's view that consideration of legitimate unclaimed credits, deductions, or objections, subject to certain limitations and exclusions," is proper. U.S.S.G. Manual app. C, amend. 774 at 41–42. The amendment states:

> [T]he court should account for any unclaimed credit, deduction, or exemption that is needed to ensure a reasonable estimate of tax loss, but only to the extent that (A) the credit, deduction, or exemption was related to the tax of-

fense and could have been claimed at the time the tax offense was committed; (B) the credit, deduction, or exemption is reasonably and practicably ascertainable; and (C) the defendant presents information to support the credit, deduction, or exemption sufficiently in advance of sentence to provide an adequate opportunity to evaluate whether it has sufficient indicia of reliability to support its probable accuracy.

…

The burden is on the defendant to establish any such credit, deduction, or exemption by the preponderance of the evidence.

*Id.* at § 2T1.1 cmt. n.3. As a result, *Chavin* no longer controls the issue of whether the district court should consider unclaimed deductions. If the circumstances of the case meet the criteria outlined above, district courts should consider unclaimed deductions.

Here, the district court correctly determined that it should not have considered unclaimed deductions and other alleged errors in the 2000 Audit. Once the government established the tax loss amount, Black had the burden to show that he was entitled to credits or deductions. *Id*. There is insufficient evidence on the record to establish that at the time of Black's criminal conduct, he could have challenged the audit and reduced his tax liability. Therefore, Black did not meet his burden. So, there was no error by the district court with respect to this issue.

In sum, the district court misapplied § 2T1.1 to Black's sentence. Specifically, it erred by finding that the tax loss was more than $7 million but less than $20 million, when the tax loss, before any deductions for penalties and interest, was approximately $5.3 million. Because of the district court's errors in calculating the tax loss, it selected the wrong base offense level and improperly calculated the sentencing range.

**D. Harmless Error Analysis**

An error in calculating the sentencing guideline range is a procedural error that requires remand unless the government can show that the error is harmless. *United States v. Thompson*, 599 F.3d 595, 602 (7th Cir. 2010). To establish harmless error, the government must be able to show that the sentence would have been the same absent the error. *Abbas*, 560 F.3d at 667. At oral argument the government acknowledged that the district court's decision was driven by the guideline calculation. A review of the record reveals the same. As a result, the government cannot show that the sentence would have been the same absent the error, and the miscalculation of the tax loss amount is not harmless error. Therefore, we must remand for reconsideration of the tax loss amount.

Black also argues that his sentence was substantively unreasonable. Because we remand for resentencing, we need not address this argument. *See United States v. Halliday*, 672 F.3d 462, 475 (7th Cir. 2012).

**III.  CONCLUSION**

For the reasons stated, we VACATE Black's sentence and REMAND for full resentencing after correcting the tax loss in the guideline calculation using U.S.S.G. § 2T1.1.