**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 29, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.

CAROL JEAN SING,

  Defendant - Appellant.

No. 15-4022
(D.C. No. 2:13-CR-00045-TC-2)
(D. Utah)

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.

GERRIT TIMMERMAN, III,

  Defendant - Appellant.

No. 15-4084
(D.C. No. 2:13-CR-00045-TC-1)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **GORSUCH**, and **PHILLIPS**, Circuit Judges.

Carol Sing and Gerrit Timmerman sold tax shelters. Using "corporations sole," they said, their clients could effectively shield their assets from IRS collection efforts. That, of course, turned out to be anything but the case. The

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

corporation sole is among the oldest and least employed corporate forms, one that allows the passage of property from one officeholder to his successor, a type of incorporation that appears to have originated in England (and continues to be used primarily today) as a means for religious societies to pass property from, say, one bishop to the next. W. Cole Durham & Robert Smith, 1 *Religious Organizations and the Law* § 3:52, Westlaw (database updated Dec. 2013). It does not operate to protect the assets of ordinary taxpayers from outstanding debts owed to the IRS. Indeed, about this much there is no longer any dispute in this case, for Ms. Sing and Mr. Timmerman do not challenge their convictions to defraud the United States under 18 U.S.C. § 371.

They do, however, contest their sentences. To determine their applicable advisory guidelines ranges, the district court had to calculate the "tax loss" they caused. The guidelines define tax loss as "the total amount of loss that was the object of the offense (*i.e.*, the loss that would have resulted had the offense been successfully completed)." U.S. Sentencing Guidelines Manual (U.S.S.G.) § 2T1.1(c)(1) (U.S. Sentencing Comm'n 2014). Using a spreadsheet provided by the government that summed up the debts owed to the IRS by several of the defendants' clients at the time they created their corporations sole, the district court estimated the tax loss in this case was in excess of $2.5 million. Combining that amount with various sentencing enhancements, the district court calculated an

2

advisory guidelines range of 97 to 121 months in prison before selecting a sentence of 36 months for Ms. Sing and 48 months for Mr. Timmerman.

Ms. Sing and Mr. Timmerman argue that the district court's tax loss estimate is fatally flawed and that this error infected the whole of the sentencing process. It's not entirely clear from the text of § 2T1.1(c)(1) what mens rea the government must prove with respect to a tax loss. Rather than employing the standard and rigorous mens rea categories discussed in the Model Penal Code or much of contemporary criminal law, the guidelines say the government must show the loss amount was the "object of the [defendants'] offense (*i.e.*, the loss that would have resulted had the offense been successfully completed)." And you might well wonder whether, translated into the more helpful heuristics of the Model Penal Code, this means the government must show the defendant intended, knew of, or perhaps was recklessly indifferent to or negligent about the amount of loss the government would have suffered "had the offense been successfully completed." But, as the defendants concede, they, the government, and the district court in this case have all proceeded on the assumption that to qualify as the "object of the offense" the loss in question must have been *intended*. *See United States v. Manatau*, 647 F.3d 1048, 1048 (10th Cir. 2011). And that much, they say, the government failed to prove in this case.

We disagree. A district court does not have to calculate a tax loss with certainty; a reasonable estimate will do. *See* U.S.S.G. § 2T1.1 cmt. n.1; *United*

3

*States v. Spencer*, 178 F.3d 1365, 1368 (10th Cir. 1999).  This court, too, will reverse a district court's factual findings in support of its tax loss calculation only on a showing of clear error.  *See United States v. Hoskins*, 654 F.3d 1086, 1092 (10th Cir. 2011).  And it seems to us that, under these standards, the district court's judgment easily passes muster.  The spreadsheet on which the court relied at sentencing tallied up amounts several of the defendants' clients owed the IRS at the time they established their corporations sole.  It is beyond reasonable dispute, as well, that at least some of these amounts were known to Mr. Timmerman because documents in his own files showed that his clients' debts added up to approximately $2.559 million.[1]  The district court had ample evidence, too, to infer that Ms. Sing knew about the information contained in Mr. Timmerman's files.  Ms. Sing and Mr. Timmerman were business partners who worked together over several years to sell corporations sole to scores of clients and their business model was simple:  Ms. Sing would set up corporations sole for her own clients and serve as the resident agent for those created by Mr.

---

[1]  Documents in Mr. Timmerman's files showed that Mr. Beal owed $355,369.83.  *See* Gov't Supp. R. at 1, 93, 97, 100.  Mr. Felt owed $140,299.23. *See id.* at 11, 53.  Mr. Hoffman owed $925,564.01.  *See id.* at 23.  Mr. Leavitt owed $1,138,577.18.  *See id.* at 37, 40, 43, 104, 109, 114, 119.  These amounts include penalties and interest.  The government included penalties and interest in its tax loss calculations and we do the same while reserving the question of its propriety consistent with § 2T1.1, for any question that might be raised about it was not sufficiently briefed here to permit meaningful review.  *See generally United States v. Black*, 815 F.3d 1048, 1055 (7th Cir. 2016).

4

Timmerman, while Mr. Timmerman would refer clients to Ms. Sing.  Finally, there is plenty of evidence that the defendants knew their clients would attempt to use their corporations sole to evade the debts they owed to the IRS — indeed, several witnesses testified that they sought the defendants' services with precisely that intention in mind.  Given this aggregation of facts, we believe a factfinder could reasonably infer that the defendants intended, had their scheme succeeded, to shield their clients from collection of the amounts they owed the IRS at the time they engaged the defendants' services.  Neither does anyone before us dispute that the court could lawfully make such a factual finding at sentencing under *United States v. Booker*, 543 U.S. 220 (2005).

The judgment is affirmed.  The government's motion to supplement the record on appeal is granted.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge

No. 15-4022, United States v. Carol Jean Sing.

No. 15-4084, United States v. Gerrit Timmerman, III.


**KELLY, Circuit Judge, concurring.**


    I agree with the court's order and judgment but would reject on the merits Ms. Sing's argument, <u>see</u> Aplt. Br. (15-4022) at 24–25, 25 n.17; Aplee. Consolidated  Br. 22–29, that interest and penalties should be excluded from the tax loss calculation.  <u>See</u> <u>United States v. Black</u>, 815 F.3d 1048, 1055 (7th Cir. 2016).