*United States v. Adams*

# United States Court of Appeals
## For the Second Circuit

August Term 2019

Argued: October 10, 2019
Decided: April 7, 2020

No. 18-3650

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

DAVID M. ADAMS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the District of Connecticut
No. 16-cr-86, Vanessa L. Bryant, *Judge.*

Before: LYNCH, LOHIER, AND SULLIVAN, *Circuit Judges.*

Defendant-Appellant David Adams challenges his conviction and sentencing following his guilty plea on assorted tax offenses. He asserts six claims for relief, including that the district court (Vanessa L. Bryant, *J.*) erred in denying his motion to withdraw his guilty plea, in calculating the tax loss, and in imposing restitution. We conclude that Adams is correct that the district court lacked authority to require restitution payments to begin immediately following his

sentencing. In all other respects, however, Adams's claims are unavailing. We therefore affirm the district court's judgment as modified. In reaching this determination, we hold that, in assessing tax loss pursuant to U.S.S.G. § 2T1.1 application note 1, the district court was permitted to rely on uncharged relevant conduct constituting "willful evasion of payment" in violation of 26 U.S.C. § 7201 and "willful failure to pay" in violation of 26 U.S.C. § 7203.

AFFIRMED AS MODIFIED.

> JEREMIAH DONOVAN, Old Saybrook, Connecticut (William T. Koch, Jr., Old Lyme, Connecticut, *on the brief*), *for Defendant-Appellant* David M. Adams.
>
> SUSAN L. WINES, Assistant United States Attorney (Sandra S. Glover, Assistant United States Attorney, *on the brief*), *for* John H. Durham, United States Attorney for the District of Connecticut, New Haven, Connecticut, *for Appellee* United States of America.

RICHARD J. SULLIVAN, *Circuit Judge*:

Defendant-Appellant David Adams appeals from a judgment of conviction entered on November 27, 2018, in the United States District Court for the District of Connecticut (Vanessa L. Bryant, *Judge*), following his guilty plea to assorted tax offenses, including making and subscribing to a false tax return, tax evasion, and attempting to interfere with the administration of the internal revenue laws. Adams raises six contentions, including that the district court erred in denying his motion to withdraw his guilty plea, in calculating the tax loss for purposes of

2

sentencing, and in imposing an order of restitution that commenced immediately upon his sentencing. We conclude that Adams is correct that the district court lacked authority to require restitution payments to begin immediately following sentencing. In all other respects, however, Adams's claims are unavailing. We therefore affirm the district court's judgment as modified.

## I. Background

The district court was justified in finding the following facts, based on Adams's statements under oath during his plea allocution and the facts set forth in the presentence investigation report ("PSR"), which was adopted by the district court without substantial objection from Adams at sentencing. Over the course of at least 14 years, Adams engaged in a concerted campaign to obstruct the IRS's efforts to collect his delinquent tax payments and to secure overdue tax returns. He lied to and manipulated his accountant, filed extension requests containing false information, claimed to have made payments that he had not made, missed deadlines, lied that checks were in the mail, unjustifiably blamed his accountant for errors and delays, bounced checks, and fraudulently claimed financial distress at times when he had the funds necessary to pay his tax liability, all the while spending lavishly on a lifestyle that included purchasing and leasing multiple

luxury vehicles, spending millions to construct a mansion in East Lyme, Connecticut, and staying at upscale hotels.

A grand jury eventually charged Adams in a six-count superseding indictment. Counts One, Three, and Five charged Adams with making and subscribing to false tax returns for the years 2009, 2011, and 2012, in violation of 18 U.S.C. § 2 and 26 U.S.C. § 7206(1). Counts Two and Four charged Adams with tax evasion in 2011 and 2012, in violation of 18 U.S.C. § 2 and 26 U.S.C. § 7201. Count Six charged Adams with attempting to interfere with the administration of the internal revenue laws, in violation of 18 U.S.C. § 2 and 26 U.S.C. § 7212(a).

Adams pleaded guilty to the superseding indictment on October 10, 2017. During the change of plea hearing, the government informed Adams in open court about the potential terms of imprisonment, fines, and restitution that he faced as a result of the charges. For Counts One, Three, and Five – the making and subscribing to false tax return offenses – the government advised Adams that "[e]ach . . . count[] carrie[d] with it a statutory maximum term of imprisonment of up to three years; . . . and under the alternative minimum fine provision, a fine of the greatest of twice the gross gain to the defendant resulting from the offense, twice the gross loss resulting from the offense, or $100,000." Gov't App'x at 136.

4

The government also stated that it would "be seeking restitution on those counts." *Id.* For Counts Two and Four – the tax evasion offenses – the government informed Adams that each "count carrie[d] with it a maximum statutory term of imprisonment of up to five years; . . . [and] again, the alternative minimum fine provision as [the government] recited for the false return counts." *Id.* at 137. For Count Six – the attempt to interfere with the administration of the internal revenue laws – the government explained that Adams faced "a potential term of imprisonment of up to three years [and] a $5,000 fine." *Id.* During the hearing, Adams represented under oath that he understood the "potential penalties and fines" and further stated that he had discussed them with his counsel. *Id.* at 138. He made similar representations in his written Petition to Enter a Plea of Guilty, which he executed prior to the plea hearing. *Id.* at 391 ("I fully understand the sentence which the Court may impose, including the minimum and maximum penalty, the term of imprisonment, fine, and term of supervised release, and I fully understand the Court's obligation to impose a special assessment and the Court's authority to order restitution and/or forfeiture, if applicable.").

Several months later, the Probation Office issued a PSR that reiterated these maximum penalties and fines. It twice listed the maximum imprisonment terms

for each of the six counts, and calculated the sentencing range under the United States Sentencing Guidelines ("U.S.S.G.") to be 78 to 97 months. It also advised that the maximum fine for each of Counts One through Five was $100,000, while the maximum fine for Count Six was $5000. During the sentencing proceeding that took place on November 27, 2018, Adams acknowledged that he had an opportunity to read the PSR and raised no objections to it.

The district court sentenced Adams principally to 90 months' imprisonment and $4,872,172.91 in restitution payable to the IRS. On appeal, Adams asserts six separate challenges to his conviction and sentencing. We address each contention in turn.

## II. Adams Is Not Entitled to Withdraw His Guilty Plea

Adams argues that he should be "permitted to withdraw his plea" because the district court violated Rule 11 when it (1) failed to apprise him that the sentences for his convictions could run consecutively, (2) misinformed him about the maximum fine he faced, and (3) incorrectly represented the scope of restitution. Adams's Br. at 21; *see also id.* at 9–16. Though he acknowledges that "Rule 11 deficiencies frequently do not result in reversals because the complained-of error is frequently hypertechnical and the appellant is unable to prove harm,"

6

he counters that these failings were "whopper[s]" and thus "[t]he harm is obvious" – he "pleaded guilty thinking that he could be sentenced to a maximum of five years" and "would not have pleaded guilty if he knew that he could be sentenced to more than five years." *Id.* at 20.

Because Adams did not object to the purported Rule 11 violations before the district court, we review them for plain error. *United States v. Espinal*, 634 F.3d 655, 658 (2d Cir. 2011). "In the context of a Rule 11 violation, to show plain error, a defendant must establish that the violation affected substantial rights and that there is 'a reasonable probability that, but for the error, he would not have entered the plea.'" *United States v. Vaval*, 404 F.3d 144, 151 (2d Cir. 2005) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)).

Rule 11 requires that, "[b]efore the court accepts a plea of guilty . . . , the court must inform the defendant of, and determine that the defendant understands . . . any maximum possible penalty, including imprisonment, fine, and term of supervised release[,] . . . [and] the court's authority to order restitution." Fed. R. Crim. P. 11(b). "A variance from the requirements of [Rule 11] is harmless error if it does not affect substantial rights." Fed. R. Crim. P. 11(h).

7

Adams has not established plain error under Rule 11. As an initial matter, contrary to Adams's interpretation of Rule 11, a district court's failure to advise a defendant that sentences could run consecutively does not render a guilty plea invalid. *See United States v. Vermeulen*, 436 F.2d 72, 75 (2d Cir. 1970) (finding that the district court fulfilled its Rule 11 obligations where it informed defendant of the terms of imprisonment he could receive on each of two counts despite not using the words "consecutive" or "consecutively"); *see also United States v. Castillo*, 303 F. App'x 989, 991 (2d Cir. 2008); *United States v. Humphrey*, 164 F.3d 585, 587 & n.2 (11th Cir. 1999) (noting that the Second Circuit does not require a court to explicitly inform a defendant "about the consecutive nature of multiple sentences" under Rule 11); *Michel v. United States*, 507 F.2d 461, 465 n.4 (2d Cir. 1974). Although a district court must inform the defendant of the maximum possible sentence he faces on each count, Fed. R. Crim. P. 11(b)(1)(H), Rule 11 does not require a district court to "do the math" for a defendant. This is because the logical inference from a listing of the maximum terms of imprisonment for the individual counts is that the terms of imprisonment for each could run consecutively. *See United States v. Hamilton*, 568 F.2d 1302, 1306 (9th Cir. 1978) (explaining that informing defendant of maximum imprisonment terms for each of two counts

"implicitly alerted [defendant] to the possibility of consecutive sentencing"). Numerous other courts agree with this interpretation of Rule 11. *See, e.g.*, *United States v. Burney*, 75 F.3d 442, 445 (8th Cir. 1996) (finding no error where district court advised defendant of the maximum imprisonment term for each count, thereby implicitly disclosing "the possibility of consecutive sentencing"); *United States v. Ospina*, 18 F.3d 1332, 1334 (6th Cir. 1994) (determining that "there is no requirement in [Rule] 11 that the court explicitly admonish a defendant that a sentence may be imposed consecutively"); *United States v. Rubalcaba*, 811 F.2d 491, 494 (9th Cir. 1987) (concluding that "[t]he trial court need not inform the defendant that the sentences to each count may run consecutively"). Accordingly, we hold that Rule 11 did not require the district court to explicitly inform Adams that his sentences could run consecutively.[1]

Here, the record amply demonstrates that the district court fulfilled its obligations under Rule 11. At the plea colloquy, Adams was informed of the maximum term of imprisonment and maximum fine for each count. Adams was also advised that the government would seek restitution, thereby alerting him to

---

[1] Of course, a district or magistrate judge conducting a plea allocution may choose to go beyond what is minimally required by Rule 11. Judges may well decide, in the exercise of their discretion, that it is preferable to advise a defendant explicitly of the possibility, where applicable, that the sentences for multiple counts may be imposed to run consecutively.

the possibility that the court may order restitution. Adams represented under oath during the plea colloquy that he understood these potential penalties and fines.

In any event, Adams cannot show an effect on his substantial rights from any purported deficiency in the plea colloquy. Prior to sentencing, aside from objecting to the inclusion of interest and penalties in the tax loss, Adams made no objection to any of the provisions in the PSR that addressed penalties, fines, or restitution. Adams's assertion that he was misinformed about the potential fine is particularly unpersuasive. Although the government mistakenly advised him that he faced a fine of the greatest of twice the gross gain, twice the gross loss, or *$100,000* (as set forth in Title 26), instead of the greatest of twice the gross gain, twice the gross loss, or *$250,000* (as set forth in 18 U.S.C. § 3571(b)(3)), Adams had previously been clearly told that the IRS's loss was over $4.7 million, rendering the error meaningless. Consequently, Adams cannot show that any technical error with respect to the fine affected his substantial rights.

Adams also asserts that, though he "was informed during the plea proceeding that the government would seek restitution arising out of his filing of false returns for 2009, 2011 and 2012[,] [h]e was given no warning that restitution could be ordered for offenses committed with respect to his 2002, 2006, 2007 and

10

2008 taxes." Adams's Br. at 35. Therefore, Adams argues that his plea was not knowing and intelligent, as required by Rule 11. Once again, Adams cannot demonstrate plain error, since he was informed numerous times of the court's authority to order restitution for his offenses – before sentencing, during the sentencing hearing, and after restitution was ordered – and never objected to that restitution.

The PSR advised Adams that "[r]estitution may be ordered in this case" under U.S.S.G. § 5E1.1 and set forth the total loss to the IRS as $4,871,078.84. PSR ¶¶ 201–202. The government's May 8, 2018 Supplemental Memorandum Regarding Restitution detailed the court's authority to impose restitution and gave a thorough breakdown of every component of restitution for each tax year. At sentencing, the court calculated the restitution amount to be $4,872,172.91. After the court ordered restitution in that amount, Adams quibbled with the assets that the government was trying to freeze and asked for a stay of the restitution order, but again did not object to the restitution itself. The record thus evinces that (1) Adams was specifically informed during the Rule 11 proceeding that the government would seek restitution, (2) he was informed of restitution in the PSR and the government's sentencing submission, each of which referenced losses

from 2002, 2006, 2007, and 2008, and (3) his counsel acknowledged during the sentencing hearing that the court was likely to order restitution in the amount of $4.8 million – a figure that expressly included losses from 2002, 2006, 2007, and 2008. Put simply, Adams cannot demonstrate plain error affecting substantial rights with respect to the scope of restitution. *See Vaval*, 404 F.3d at 152.

Accordingly, Adams's attempts to manufacture plain error in the plea allocution process fail.

### III. The District Court Properly Calculated the Tax Loss

Adams also contests the district court's inclusion of "accrued interest and tax penalties in calculating the tax loss." Adams's Br. at 27. He maintains that "[b]ecause [he] was not convicted of a willful evasion of payment under 26 U.S.C. § 7201 or willful failure to pay under 26 U.S.C. § 7203, the trial court erred" by including these figures in the tax loss. *Id.* "We review a district court's interpretation of the Sentencing Guidelines *de novo* . . . [and] its factual findings only for clear error." *United States v. Valente*, 915 F.3d 916, 921 (2d Cir. 2019).

Under the federal tax code, a taxpayer who owes taxes and fails to file a return or pay those taxes on time will be assessed interest and penalties on top of the initial tax. 26 U.S.C. § 6651(a) (requiring penalties for failure to file returns and

pay taxes); *id.* § 6601(a) (requiring interest on tax delinquencies). Once those amounts are assessed, they become part of the total tax bill owed by the taxpayer. *Id.* § 6651(a) (stating that penalties for failure to file a return or pay taxes "shall be added to the amount required to be shown as tax"); *id.* § 6601(e)(1) (requiring interest to be treated as taxes). If a taxpayer continues to be delinquent in paying his tax bill, additional interest and penalties then accrue on that tax bill until it is paid in full. *Id.* §§ 6621, 6651(d).

But not every dollar owed to the IRS is counted as "tax loss" for sentencing purposes in a criminal tax prosecution. Generally speaking, the federal sentencing guidelines provide that the "tax loss" resulting from an offense "does not include interest or penalties, *except* in willful evasion of payment cases under 26 U.S.C. § 7201 and willful failure to pay cases under 26 U.S.C. § 7203." U.S.S.G. § 2T1.1 cmt. n.1 (emphasis added).

Here, the district court determined the tax loss to be $4,253,798.49, which included $3,375,094.49 of back taxes, interest, and penalties for 2002, 2006, 2007, 2008, 2009, and 2011, and $878,704 of tax due on income that Adams failed to declare in 2011 and 2012. Since he did not plead guilty to a violation of 26 U.S.C. § 7201 or § 7203, Adams contends that the district court improperly included

13

interest and penalties in the loss amount. The issue thus presented is whether the exception to § 2T1.1 is limited to cases where the defendant has been convicted of an offense under §§ 7201 or 7203 or whether the district court may consider uncharged conduct that involves the "willful evasion of payment" or the "willful failure to pay" covered by those statutes.

Although this is an issue of first impression in our Court, at least two of our sister Circuits have held that convictions are not required for the exception to apply. In *United States v. Black*, 815 F.3d 1048 (7th Cir. 2016), a jury convicted the defendant "of one count of obstructing and impeding the IRS from collecting taxes" in violation of 26 U.S.C. § 7212(a) and "four counts of passing and presenting fictitious financial instruments with intent to defraud" in violation of 18 U.S.C. § 514(a)(3), *id.* at 1049. In calculating the tax loss for sentencing, the district court included interest and penalties because it determined that defendant's object in committing the offenses "was to defraud the IRS by willfully failing to pay and willfully evading his payment of his debt obligations to the IRS," thereby qualifying for the § 2T1.1 exception based on "conduct . . . similar to conduct criminalized by § 7201 and § 7203." *Id.* at 1054. The Seventh Circuit affirmed the district court on this point, holding that "the statutory reference in

14

U.S.S.G. § 2T1.1 n.1 does not require a charge or conviction to be applicable to a defendant's case." *Id.* at 1055.

In reaching this conclusion, the court noted that the Sentencing Guidelines themselves provide that "[u]nless . . . an express direction is included [in a Guidelines provision], . . . use of a statutory reference to describe a particular set of circumstances does not require a conviction under the referenced statute." U.S.S.G. § 1B1.3 cmt. n.7. Consequently, "[b]ecause . . . § 2T1.1 cmt. n.1 does not expressly direct the court to exclude penalties and interest [unless] the defendant was *convicted* under 26 U.S.C. §§ 7201 or 7203, a conviction under one of these statutes is not required for the court to include penalties and interest." *Black*, 815 F.3d at 1055. Instead, "[i]f the object of the offense is to avoid the tax, penalties, and interest, then penalties and interest should be included in the tax loss." *Id.* The First Circuit has reached a similar conclusion. *United States v. Thomas*, 635 F.3d 13, 16–18 (1st Cir. 2011).

Since "the statutory reference in . . . § 2T1.1 n.1 does not require a charge or conviction to be applicable to a defendant's case," *Black*, 815 F.3d at 1055, we hold that, under U.S.S.G. § 2T1.1 application note 1, the exception permitting interest and penalties to be included in the tax loss calculation for "willful evasion of

15

payment cases" under 26 U.S.C. § 7201 and "willful failure to pay cases" under 26 U.S.C. § 7203 can be applied based on uncharged relevant conduct constituting violations of those statutes. Thus, even where a defendant has not been convicted of willful evasion of payment under § 7201 or willful failure to pay under § 7203, penalties and interest may still be included in the tax loss calculation "[i]f the object of the offense is to avoid the tax, penalties, and interest." *Black*, 815 F.3d at 1055.

The district court below determined that Adams's conduct involved the willful evasion of taxes, and that the tax loss should therefore include interest and penalties. The court did not clearly err in making this determination. The record overwhelmingly demonstrated that the object of Adams's offenses was willful evasion of payment: he lied to and manipulated his accountant, filed extension requests containing false information, claimed to have made payments that he had not made, missed deadlines, lied that checks were in the mail, unjustifiably blamed his accountant for errors and delays, bounced checks, and fraudulently claimed financial distress at times when he had the funds necessary to pay his tax liability. In pleading guilty, Adams admitted under oath that he willfully overestimated his tax payments "so as to lower [his] [tax] liability," willfully failed to declare income from the sale of his business, and willfully failed to cooperate with the IRS's efforts

16

to collect his taxes by bouncing checks and being deceitful about payments and assets. Gov't App'x at 147. We find no error in the district court's interpretation of § 2T1.1 and its calculation of the tax loss.

IV. The District Court Properly Concluded That Adams Obstructed Justice

Adams next asserts that the district court wrongly assessed a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1. Specifically, Adams maintains that although he "may have interfered with the administration of *tax collection* by the Treasury Department, [he] did not interfere in the *administration of justice* by the Justice Department or the Judicial Branch." Adams's Br. at 29. Once again, Adams failed to raise this objection in the district court, so we review for plain error. *See United States v. Hertular*, 562 F.3d 433, 449 (2d Cir. 2009); *see also United States v. Reyes*, 718 F. App'x 56, 59 (2d Cir. 2018).

Under § 3C1.1, a two-level enhancement applies to a defendant's adjusted offense level "[i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentence of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense." Application Note 1 to that

17

section provides that "[o]bstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." U.S.S.G. § 3C1.1 cmt. n.1.

We need not consider whether Adams's pre-indictment conduct could justify the enhancement because a two-level enhancement for obstruction was warranted based entirely on the district court's explicit finding that Adams had obstructed proceedings in this case even after the indictment was returned. Specifically, the district court determined that Adams had "willfully engaged" in a game of "cat and mouse" – "not only with the Internal Revenue Service, but also with this Court where he employed the same tactics of deceit and [obfuscation] to evade his tax liability and the criminal consequences of his convictions." Gov't App'x at 329. The court determined that Adams used the year between his guilty plea and his sentencing to make "financial arrangements" designed to thwart the administration of justice by "concealing, transferring and failing to disclose his assets." *Id.* at 369. The district court's findings amply supported the enhancement for obstruction under § 3C1.1. *See United States v. Anderson*, 68 F.3d 1050, 1055–56 (8th Cir. 1995) (determining that defendant's incomplete and false statements

18

regarding his finances during presentence investigation supported § 3C1.1 enhancement).

Accordingly, the district court did not err in determining that Adams willfully obstructed or impeded the administration of justice, thereby warranting a two-level sentence enhancement under § 3C1.1.

V. Although the District Court Erred in Ordering the Payment of Immediate Restitution, the Court Had the Authority to Order Restitution as a Condition of Supervised Release

Adams raises a litany of claims attacking the validity of the district court's restitution order. Once again, Adams did not object to the restitution order at the time of sentencing. Therefore, we review for plain error. *United States v. Zangari*, 677 F.3d 86, 91 (2d Cir. 2012).

A.

Adams asserts that "the district court was not authorized to issue any restitution order at all" because "[n]o statute authorizes a court to impose a restitution order when sentencing for the violations of the tax code provisions that were the subject of this indictment." Adams's Br. at 33–34 (citing 18 U.S.C. § 3663). He therefore urges that "[t]he court's restitution order should be vacated entirely." *Id.* at 35.

Adams is correct that the court exceeded its authority by ordering restitution as part of the judgment "to begin immediately," Gov't App'x at 361, since neither 18 U.S.C. § 3663(a) nor § 3663A permits restitution for Title 26 offenses. But as Adams himself concedes, district courts do have the authority to order restitution "as a condition of supervised release." Adams's Br. at 34 (emphasis omitted). Specifically, 18 U.S.C. § 3583(d) authorizes courts to impose, as a condition of supervised release, "any condition set forth as a discretionary condition of probation in section 3563(b)." One such condition is the requirement that the defendant "make restitution to a victim of the offense." 18 U.S.C. § 3563(b)(2). Section 5E1.1 of the Sentencing Guidelines further states that "[i]n the case of an identifiable victim, the court shall . . . impose a term of . . . supervised release with a condition requiring restitution for the full amount of the victim's loss" even if the offense does not qualify for restitution under 18 U.S.C. § 3663(a). Thus, we have repeatedly held that district courts may impose restitution in Title 26 cases as a condition of supervised release. *See, e.g.*, *United States v. Bok*, 156 F.3d 157, 166 (2d Cir. 1998) (holding in a Title 26 case that "a plain reading of §§ 3583(d) and 3563(b) permits a judge to award restitution as a condition of supervised release without regard to the limitations in § 3663(a)").

20

As a practical matter, we have long recognized the power to modify judgments to conform with the district court's authority and to affirm them as modified, "as may be just under the circumstances." 28 U.S.C. § 2106; *see USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 136 (2d Cir. 2005). Therefore, we need not vacate the judgment in its entirety, but can modify it to provide that restitution is imposed only as a condition of supervised release. *See United States v. Bolton*, 908 F.3d 75, 98 (5th Cir. 2018) (modifying a judgment in a tax case so that restitution was not due until the supervised release term started where the district court mistakenly ordered that restitution was due "immediately" and also ordered restitution as a special condition of supervised release), *cert. denied*, 140 S. Ct. 47 (2019). We therefore modify the judgment to provide that restitution is a condition of supervised release that shall commence upon Adams's release from custody.

B.

Adams next maintains that the district court erred by "order[ing] restitution for four additional tax years that were not the subject of the evasion or false statement convictions," since "[a] district court's restitution order ordinarily is limited by the loss charged in the count of conviction." Adams's Br. at 35. Once again, Adams is mistaken. The law is clear that a district court may order

21

restitution to the victim "of the offense" as a condition of supervised release. 18 U.S.C. § 3563(b). Here, Adams's obstructive conduct in violation of 26 U.S.C. § 7212(a) caused the IRS losses in 2002, 2006, 2007, and 2008. The court explicitly found that Adams had "willfully engaged in a decade-long scheme" to deceive the IRS and obfuscate the information necessary to determine his tax liability. Gov't App'x at 329. It also found that Adams's conduct was "perpetual," that it "persisted without abatement," and that he used the same dilatory and obstructive tactics in 2002, 2006, 2007, and 2008 as he did for the years for which he sustained convictions in the other counts. *Id.* at 334. Consequently, the district court did not err in including the IRS's losses from 2002, 2006, 2007, and 2008 in the restitution amount.

Adams also claims that "the restitution order included taxes and penalties that were outside the statute of limitations." Adams's Br. at 36. We disagree. Violations of 26 U.S.C. § 7212(a) are subject to a six-year limitations period that does not start to run until the last act in furtherance of the scheme. *United States v. Kelly*, 147 F.3d 172, 177 (2d Cir. 1998) (holding that it was not plain error for the district court to apply a six-year limitations period to violations of § 7212(a)); *see also United States v. Wilson*, 118 F.3d 228, 236 (4th Cir. 1997) ("The limitations period

22

for a violation of § 7212(a) . . . begins to run on the date of the last corrupt act.");

*cf. United States v. DiPetto*, 936 F.2d 96, 98 (2d Cir. 1991) (limitations period for tax evasion runs from "the day of the last act of evasion"). Adams's persistent obstructive conduct encompassed by his § 7212 offense was part of the same pattern of delay that began well before 2002 and caused the IRS to sustain losses in 2002, 2006, 2007, and 2008. Accordingly, the losses the IRS sustained in those years were within the limitations period and appropriately included in the restitution amount.

## C.

Adams finally contends that the restitution amount impermissibly included accrued interest and penalties. Adams's Br. at 36. He is again incorrect. The restitution amount properly included $618,374.42 in accrued interest through May 30, 2018, but did not include any "accrued penalties." Federal tax law imposes interest on tax delinquencies to compensate the government for the time-value of its monetary loss. *See* 26 U.S.C. § 6601. Consequently, because a district court must "order restitution to each victim in the full amount of each victim's losses," 18 U.S.C. § 3664(f)(1)(A); *see id.* § 3556, and because prejudgment interest is part of the government's loss when delinquent taxes are not timely paid, the district court

23

properly included accrued interest in the restitution amount, *see United States v. Qurashi*, 634 F.3d 699, 703 (2d Cir. 2011). The court specifically recognized that Adams's failure to pay his tax debt meant that the IRS sustained a loss "because money has a time value." Gov't App'x at 330. The district court did not plainly err by including accrued interest in the restitution amount.

## VI. Adams's Double Jeopardy Claim Has Been Waived

With little elaboration, Adams perfunctorily contends that this Court "should vacate the sentences imposed on counts three and five" because "a conviction under Section 7206(1) for filing . . . false returns merges into a conviction under Section 7201 for the inclusive fraud of tax evasion." Adams's Br. at 38. We need not consider the merits of Adams's claim because it is waived.

A defendant generally may not raise a constitutional double jeopardy claim on appeal unless it was raised prior to his guilty plea. *See United States v. Leyland*, 277 F.3d 628, 632 (2d Cir. 2002) (holding that "[t]o preserve his [double jeopardy] claims, [defendant] needed to raise his double jeopardy argument before pleading guilty"). Indeed, the law is clear that "[c]ourts will conclude that a defendant's guilty plea waived his double jeopardy claims even if the defendant does not know about the claim at the time of the plea." *Id.* "Conscious relinquishment of the

24

double jeopardy claim is not required because the guilty plea constitutes an admission sufficient to establish that [a] defendant committed a crime, not an 'inquiry into a defendant's subjective understanding of the range of potential defenses.'" *Id.* (quoting *United States v. Broce*, 488 U.S. 563, 573–74 (1989)). There is, however, a limited exception to this bar "where on the face of the record the court had no power to enter the conviction or impose the sentence," *Broce*, 488 U.S. at 569, such as where the statute under which the defendant was convicted is unconstitutional, *Class v. United States*, 138 S. Ct. 798, 804–05 (2018). That was clearly not the case here.

Consequently, because Adams had the opportunity to challenge the superseding indictment on double jeopardy grounds before pleading guilty but chose to forego that option, he has waived the claim for appellate review.

## VII. Adams Was Not Deprived of His Right to a Fair and Impartial Tribunal

Adams maintains that the district court "violated [his] right to be sentenced by a fair and impartial tribunal" because it allegedly considered published news articles and reader comments on those articles that the government submitted as part of its sentencing memorandum. Adams's Br. at 42. He accuses the district court of being "tainted by the government's reliance on the views

25

of . . . anonymous bloggers," and "requests that the case be remanded for sentencing before a [different] sentencing judge." *Id.* at 44. Adams fails to establish that the district court abused its discretion in considering the government's submission.

Adams's claim that he was deprived of a "fair and impartial tribunal" is a claim that the district court committed procedural error in its consideration of the 18 U.S.C. § 3553(a) factors. We review procedural reasonableness and the district court's analysis of the § 3553(a) factors for abuse of discretion. *United States v. Desnoyers*, 708 F.3d 378, 385 (2d Cir. 2013). "A district court commits procedural error where it fails to calculate the Guidelines range . . . , makes a mistake in its Guidelines calculation, or treats the Guidelines as mandatory." *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc). "It also errs procedurally if it does not consider the § 3553(a) factors, or rests its sentence on a clearly erroneous finding of fact." *Id.*

The district court did not abuse its discretion in considering the news articles and reader comments, since they were relevant to assessing various factors pursuant to 18 U.S.C. § 3553(a), including the need for a just punishment and the need to promote respect for the law. In its February 21, 2018 sentencing

26

memorandum, the government referred to online reader comments from published newspaper articles that reported on Adams's trial and guilty plea. As part of its contention that a substantial sentence was necessary to promote respect for the law, the government cited comments from three readers, who opined:

(1) "White collar crime is not prosecuted like other crimes. The courts will throw someone in jail for stealing food to eat but guys like this get four or five passes. After all it depends on who you are and know."

(2) "Adams subscribes to the same disregard for the rule of law and dishonesty, immorality and corruption of privileged entitlement that is rampant in DC. We have personally experienced his refusal to pay what he owes."

(3) "Here's a prediction: They'll settle with this crook for half of what he actually owes, put him on a payment plan (which he won't pay), and give him 30 days [*sic*] house arrest in one of his lavish houses. He'll save half of his tax obligation and be able to take a vacation. Smart business. Let's see what happens."

Gov't App'x at 474–75. With respect to the need for the sentence to reflect a just punishment, the government cited comments from two additional readers, who observed:

(1) "The Day article might have been more informative if it had included a photo of the individual, as well as a photo of his magnificent estate and grand mansion at [REDACTED] Scott Road. The public would benefit from knowing more about this poor man who can't pay his taxes, and his modus operandi."

27

(2) "I have no doubt that he is a nice guy to his family and those in his personal circle. But the fact is that he chose not pay his taxes . . . . Some of us work hard and struggle to pay our taxes and follow the law and we do so on probably a quarter of his income, without multiple grand homes, car collections, vacations and all the bonuses of the wealthy life. I'm a really nice person, and I know a lot of really nice people, but we contribute by paying our fare [*sic*] share and being honest, helpful citizens. I am not about to assassinate Mr. Adams' character here, and I hope this thread doesn't go there, but what he DID was WRONG and this is not the first time he has worked the system to enhance his own wealth . . . ."

*Id.* at 475–76.

In denying Adams's motion to strike the newspaper articles and reader comments from the government's sentencing submission, the district court concluded that those materials "[we]re relevant to the subject matter for which they [we]re cited, specifically, the need for the sentence to promote respect for the law on the part of the general public." *Id.* at 37. We cannot say that it was an abuse of discretion for the court to consider these comments in evaluating the factors to be considered in imposing a sentence. *See* 18 U.S.C. § 3553(a)(2)(A) ("[T]he court . . . shall consider . . . the need for the sentence imposed . . . to promote respect for the law, and to provide just punishment for the offense.").

Finally, Adams asserts a host of ways in which the district court was allegedly hostile to him over the course of the proceedings. He complains that the

28

court was skeptical of or rejected certain contentions he made at sentencing, including that his criminal history had been overstated and that his conduct had not physically harmed anyone, and that the court would not hear from his relatives who had submitted letters on his behalf, though it did hear from Adams's former accountant as a victim of Adams's crimes. However, "claims of judicial bias must be based on extrajudicial matters, and adverse rulings, without more, will rarely suffice to provide a reasonable basis for questioning a judge's impartiality." *Chen v. Chen Qualified Settlement Fund*, 552 F.3d 218, 227 (2d Cir. 2009) (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Furthermore, the district court *did* allow Adams's family members to give statements at sentencing. Consequently, Adams's complaints are meritless.

## CONCLUSION

For the foregoing reasons, we AFFIRM Adams's conviction and sentence, though we MODIFY the judgment to provide that restitution is only a condition of supervised release and is not due until Adams commences his term of supervised release.